**Satyendranath DAS, Plaintiff–Appellant,**

v.

**DEPARTMENT OF HEALTH & HUMAN SERVICES, Defendant–Appellee.**

**No. 92–15645.**

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 16, 1993 *.

March 7, 1994.

* The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

Satyendranath Das, plaintiff-appellant, pro se.

Richard K. Waterman and Joseph Stein, U.S. Dept. of Health and Human Services, San Francisco, CA, for defendant-appellee.

Before: WALLACE, Chief Judge, GARTH,** and WIGGINS, Circuit Judges.

## OPINION

WIGGINS, Circuit Judge:

Satyendranath Das appeals the district court's grant of a motion for summary judgment to the Secretary of Health and Human Services. 789 F.Supp. 324 (1992). The Secretary found that Das's social security retirement benefits are subject to reduction pursuant to the Windfall Elimination Provision (WEP), 42 U.S.C. § 415(a)(7).[1] We have jurisdiction under 28 U.S.C. § 1291. We affirm.

---

** Hon. Leonard I. Garth, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

1. Section 415(a)(7)(A) of 42 U.S.C. provides, "In the case of an individual ... who attains age 62 after 1985 ... *and* who first becomes eligible after 1985 for a monthly periodic payment ..., the primary insurance amount of that individual during his or her concurrent entitlement to such monthly periodic payment and to old-age ... benefits shall be computed or recomputed under subparagraph (B)." (Emphasis supplied.)

## I.

■ Das was born in India on February 1, 1926. He was employed by the Federal Communications Commission as an electronics engineer for a total of eight years and nine months. These wages were not covered by the social security system.[2] As a result of this employment, he became eligible for a federal civil service retirement pension. Das also worked in the private sector for a total of eighteen years. These wages were covered by the social security system.

In 1988, Das filed his application for social security retirement benefits. The Social Security Administration (SSA) notified him that he was eligible for social security retirement benefits, but that the benefits were subject to reduction pursuant to the WEP. Das requested de novo review by an administrative law judge (ALJ). The ALJ affirmed. Although the Appeals Council denied Das's request for review, it did issue a statement setting forth the law on the reduction of social security retirement benefits pursuant to the WEP. The ALJ's ruling became the final decision of the Secretary. Das sought judicial review. The district court granted the Secretary's motion for summary judgment.

## II.

■ The primary issue before the court is whether an individual becomes eligible for his federal civil service pension at the time he earns vested rights in the federal civil service pension, or at the time he satisfies all prerequisites to the payment of benefits. This issue of eligibility for WEP purposes is one of first impression in the Ninth Circuit. We hold that an individual becomes eligible only at the time he satisfies all prerequisites.

In general, the WEP applies to any individual who earned both covered and noncovered wages. The WEP was enacted to eliminate the windfall such an individual would enjoy in the absence of such a provision. *See* 1983 U.S.Code Cong. & Admin.News 143, 239–40; *Johnson v. Sullivan*, 777 F.Supp.

741, 743 (W.D.Wis.1991) (stating that the WEP "is intended to prevent applicants from receiving excess pension benefits because their careers were split between Social Security employment and government employment not covered by Social Security").

The windfall arises when the pension system for the private sector and the pension system for the public sector overlap. An individual who worked in the private sector and thus earned covered wages receives social security retirement benefits. An individual who worked in the public sector and thus earned noncovered wages receives a federal civil service pension. The federal civil service pension plan is structured so that an individual who worked for noncovered wages receives roughly the same retirement income as an individual who worked for covered wages. Consequently, an individual who worked for both covered and noncovered wages would receive a windfall absent the WEP because he would be eligible for both social security retirement benefits and federal civil service pension payments. The WEP prevents this windfall by modifying the standard formula for calculating monthly social security retirement benefits.

The WEP applies only to those individuals who become eligible to receive a monthly federal civil service pension payment after 1985. Congress delayed the date of the WEP's effectiveness until two years after enactment to allow workers to adjust their retirement plans.

■ Das argues that the WEP does not apply to him. He contends that he became eligible to receive his monthly federal civil service pension payment before 1986. He asserts that he became "eligible ... for a monthly periodic payment" when he became eligible to earn vested rights in the federal civil service pension, which occurred in 1979 when he completed five years of civil service. Das insists that "[o]ne does not have to receive the money to first become eligible to the civil service annuity."

---

**2.** For purposes of the Social Security Act, wages upon which an individual pays social security taxes are "covered" wages and those upon which

an individual pays no social security tax are "noncovered." *Smith v. Sullivan*, 982 F.2d 308, 310 (8th Cir.1992).

The Secretary argues that the WEP does apply to Das. The Secretary contends that Das became eligible to receive his monthly federal civil service pension payment after 1985. The Secretary argues that Das became "eligible ... for a monthly periodic payment" only when he met *all* the prerequisites to the payment of benefits. *See Johnson*, 777 F.Supp. at 743 (stating that "eligibility exists only at the time the claimant could receive a payment."). The Secretary asserts that one such prerequisite was that Das reach the age of 62. *See* 5 U.S.C. §§ 8336(f),[3] 8338(a)[4] (provisions regulating federal civil service pensions). Because Das did not reach the age of 62 until February 1, 1988, he did not become eligible to receive monthly pension payments until after the WEP became effective in 1985. Furthermore, the Secretary argues, the language of the provision itself specifically applies to Das, an individual who "attains age 62 after 1985." 42 U.S.C. § 415(a)(7)(A)(i).

■■■ We review de novo the district court's grant of a motion for summary judgment. *Hermes v. Secretary of HHS*, 926 F.2d 789, 790 (9th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 71, 116 L.Ed.2d 45 (1991). It is the task of the Secretary to interpret and apply the Social Security Act. *Schweiker v. Gray Panthers*, 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981). Accordingly, we must give considerable weight to the Secretary's construction of the Act. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). We may not substitute our own construction for that of the Secretary where the Secretary's construction is reasonable. *Id.*

The language of the WEP making the provision applicable to anyone "who first becomes eligible after 1985 for a monthly periodic payment" is on its face ambiguous. *See Johnson*, 777 F.Supp. at 743. It could mean, as Das suggests, that the provision is inapplicable to those who, prior to 1986, have satisfied the basic qualifications for a federal civil service pension, such as having worked for five years. Or, it could mean, as the Secretary suggests, that the provision is inapplicable only to those who, prior to 1986, have met all prerequisites to the payment of benefits.

The Secretary's construction is reasonable. First, the Secretary's construction is consistent with the provision setting forth qualifications for old-age benefits under the Act. The Act provides that, to be eligible for old-age benefits, an individual must have attained the age of 62. 42 U.S.C. § 402(a)(2). Second, the Secretary's construction is consistent with Congress's understanding of the meaning of "eligible". A conference report discussing the reduction under the WEP stated,

> The amount of the noncovered pension used in this calculation is the amount payable in the first month the individual is *eligible* for both the pension and social security (i.e., the first month he or she *could receive both of these benefits if he or she applied for them*—the month of 'concurrent eligibility').

1988 U.S.Code Cong. & Admin.News 4515, 5322 (emphasis in original and supplied). The legislative history shows Congress specifically used the term "eligible" to mean "could receive benefits," the definition urged by the Secretary. Finally, the Secretary's construction is consistent with the provision to prevent a spouse from collecting both full Social Security benefits and federal government pension payments. 42 U.S.C. §§ 402(b)(4)(A), 402(c)(2)(A).

Because the Secretary's construction is reasonable, we will not substitute an alternative interpretation. *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782. Thus, the Secretary acted properly in applying this construction to Das.

### III.

■■ Das next contends that his procedural due process rights have been violated. First,

---

**3.** Section 8336(f) of 5 U.S.C. provides, "An employee who is separated from the service after becoming 62 years of age and completing 5 years of service is entitled to an annuity."

**4.** Section 8338(a) of 5 U.S.C. provides, "An employee who is separated from the service ... after completing 5 years of civilian service is entitled to an annuity beginning at the age of 62 years."

he argues, the Secretary should be required to explain how and why his social security retirement benefits are subject to reduction. Second, he asserts, he should be given an adequate opportunity to refute the position expounded by the Secretary.

The Secretary did not find any denial of procedural due process. The record is replete with evidence that Das was afforded due process. First, Das's contention that the Secretary never explained how and why his social security retirement benefits are subject to reduction is baseless. As the ALJ observed,

> [I]n all of the correspondence directed to the Social Security Administration or government officials, the claimant has not specified one point of law which has been misapplied in his case. The claimant merely relies upon vague generalities that he is being unfairly singled out and 'punished'.... *The applicable law has been explained to the claimant on numerous occasions....*

(emphasis supplied). Second, Das was permitted extensive correspondence with the SSA and was advised of his right to appear at the administrative hearing with legal representation. Das was allowed to review the entire record prior to the administrative hearing and to submit any additional evidence for consideration by the ALJ. Furthermore, Das was permitted one motion for reconsideration before the SSA, two hearings before ALJs, two requests for further review before the Appeals Council, and an appeal before the district court. Accordingly, Das has been given all the process that he is due. His procedural due process rights have not been violated.

## IV.

■ The final issue before the court is whether the WEP is constitutional. First, Das contends that the WEP is unconstitutional because it violates the Due Process Clause of the Fifth Amendment. Specifically, Das argues, the WEP denies equal protection of the law because it treats differently individuals who have similar aggregate lifetime earnings. While individuals with both covered and noncovered employment receive reduced social security retirement benefits, individuals with only covered employment receive full social security retirement benefits.

In *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960), the Court set forth the standard for testing the validity of Congress's Social Security classifications. *See Weinberger v. Salfi,* 422 U.S. 749, 768, 95 S.Ct. 2457, 2468, 45 L.Ed.2d 522 (1975). The Court held, "[T]he Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." *Flemming,* 363 U.S. at 611, 80 S.Ct. at 1373; *see Richardson v. Belcher,* 404 U.S. 78, 84, 92 S.Ct. 254, 258, 30 L.Ed.2d 231 (1971) ("If the goals sought are legitimate, and the classification adopted is rationally related to the achievement of those goals, then the action of Congress is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment."); *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) ("In the area of economics and social welfare, [Congress] does not violate the [e]qual [p]rotection [c]lause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' ") (quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)).

The WEP is rationally related to the achievement of legitimate goals. It was enacted to eliminate a windfall to individuals who are eligible to receive pensions based on both covered and noncovered employment. Furthermore, its date of effectiveness was delayed to provide individuals with both covered and noncovered employment time to adjust their retirement plans. *See Heckler v. Mathews,* 465 U.S. 728, 750–51, 104 S.Ct. 1387, 1401, 79 L.Ed.2d 646 (1984).

■ Next, Das argues that the WEP is unconstitutional because it does not meet its objectives. This argument is also meritless. First, there is no evidence that the WEP does not achieve its goals. Second,

and more importantly, whether legislation meets its objectives is never a basis for striking it down. Congress is not required to enact perfect legislation. *See Dandridge,* 397 U.S. at 485, 90 S.Ct. at 1161. For example, Congress is permitted to enact legislation that is either over-inclusive or under-inclusive. *See Railway Express Agency, Inc. v. New York,* 336 U.S. 106, 110, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949) ("It is no requirement of equal protection that all evils of the same genus be eradicated or none at all.").

Finally, Das argues that the WEP is unconstitutional because it violates property rights. Specifically, he argues, the WEP takes away his vested rights in social security retirement benefits. This argument is also misguided. Social security retirement benefits are statutory, and not contractual. These benefits may be altered or eliminated at any time. *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980); *Salfi,* 422 U.S. at 772, 95 S.Ct. at 2470; *Spraic v. United States R.R. Retirement Bd.,* 735 F.2d 1208, 1212 (9th Cir.1984).

## CONCLUSION

For the foregoing reasons, we affirm. Das became eligible for his federal civil service pension only as of February 1, 1988, the time at which he satisfied all prerequisites to the payment of benefits. Thus, the Secretary acted properly in reducing Das's social security retirement benefits pursuant to the WEP. Accordingly, the district court properly granted the Secretary's motion for summary judgment.

AFFIRMED.