[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 02-12623

D.C. Docket No. 01-00230-CV-OC-GRJ

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 16, 2003
THOMAS K. KAHN
CLERK**

RALPH STROUP,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART, Social Security Commissioner,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida.

_____
**(April 16, 2003)**

Before TJOFLAT, ANDERSON and CUDAHY[*], Circuit Judges.

CUDAHY, Circuit Judge:

　　Former police officer Ralph Stroup appeals a district court decision

upholding the Social Security Administration's calculation of his disability benefits

---

[*]Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation.

under the windfall elimination provision of the Social Security Act, 42 U.S.C. § 415(a)(7). Finding the Commissioner's construction of the windfall elimination provision reasonable, we affirm the decision of the district court.

## I.

Ralph Stroup began working for the Kokomo, Indiana, Police Department (KPD) in January 1966. Under Indiana law and the KPD pension plan, he later qualified for retirement with pension benefits after completing twenty years of service. According to the City of Kokomo and the KPD, Stroup met this service requirement on December 31, 1985, upon completion of a shift ending at 4 p.m.[1] Stroup did not immediately retire; he remained employed with the KPD until March 1988, and continued to work elsewhere until 1998. In 1996 and in 1998, Stroup applied for Social Security disability benefits on the basis of his osteoarthritis and other ailments. The Social Security Administration (SSA) found him eligible for disability benefits as of January 1, 1996.

The present dispute has to do with the calculation of those benefits. It turns out that December 31, 1985, was legally a very consequential time to qualify for

---

[1] A City of Kokomo letter actually states that Stroup became eligible on December 31, *1986*, but the Commissioner concedes that this must have been a clerical error.

2

retirement. Two years earlier, Congress had enacted the windfall elimination provision (WEP) to Social Security to eliminate the unintended "double dipping" that accrued to workers who split their careers between employment taxed for Social Security benefits ("covered") and employment exempt from Social Security taxes ("noncovered"). The SSA determines a beneficiary's primary insurance amount (the figure on which the amount of actual benefits is partially based) from his average monthly earnings. 42 U.S.C. § 415. Prior to the enactment of the WEP, this calculation was completed without regard to whether the individual's wages were covered or noncovered. As a result, an individual who had worked for both covered and noncovered wages in the course of his employment history would receive both full Social Security benefits and whatever pension benefits were provided by his noncovered employment. The WEP, as codified at 42 U.S.C. § 415(a)(7), provides that the primary insurance amount for such individuals be computed using a modified formula. However, the WEP applies only if the applicant "first becomes eligible after 1985 for a monthly periodic payment." 42 U.S.C. § 415(a)(7)(A). Individuals who become "eligible" prior to 1986 are not subject to the WEP.

Stroup completed his required twenty years of service on the last day of 1985. The SSA determined that the WEP was applicable, significantly reducing

(by as much as 40-60%, according to Stroup) his Social Security disability payments. This determination was upheld upon reconsideration by the SSA and also by an Administrative Law Judge (ALJ). The ALJ reasoned that, since Stroup worked through December 31, 1985, he could not have been eligible to receive a pension until January 1, 1986–after 1985. Stroup appealed this decision to federal district court, where a magistrate judge affirmed the ALJ's decision. Stroup appeals, arguing that he should not be subject to the WEP.[2]

## II.

Questions of statutory interpretation are reviewed de novo. *United States v. Alborola-Rodriguez*, 153 F.3d 1269, 1271 (11th Cir. 1998). However, if we find the statute in question to be ambiguous, we must accord proper deference to the interpretation adopted by the agency to which Congress has delegated the

---

[2]Stroup in his briefs also asked us to remand the case so that a complete review of his earnings record can be conducted. However, any concerns about the accuracy or completeness of his earnings record must be presented first to the SSA through its administrative appeals process. Stroup has not received a "final decision" from the SSA with respect to his earnings record that is subject to judicial review. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *Crayton v. Callahan*, 120 F.3d 1217, 1220 (11th Cir. 1997). Stroup should, therefore, raise these concerns with the SSA.

Stroup does not challenge the constitutionality of the WEP. We note that other courts have considered and affirmed the constitutionality of the provision. *See Rudykoff v. Apfel*, 193 F.3d 579 (2d Cir. 1999); *Das v. Dep't of Health and Human Servs.*, 17 F.3d 1250, 1255-56 (9th Cir. 1994).

administration of the statute. *See United States v. Mead Corp.*, 533 U.S. 218 (2001); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The Ninth Circuit has noted that the key relevant clause in the WEP, "who first becomes eligible after 1985 for a monthly periodic payment," is on its face ambiguous. *Das v. Dep't of Health and Human Servs.*, 17 F.3d 1250, 1253-54 (9th Cir. 1994). We agree. Standing alone, the statutory language could be interpreted to support either Stroup's or the Commissioner's position in this case. The statute, however, does not stand alone. Acting pursuant to its broad statutory authority, 42 U.S.C. § 405(a)[3], the SSA issued a regulation specifying what is meant by "eligibility": "We consider you to first become eligible for a monthly pension in the first *month for which* you met all requirements for the pension except that you were working or had not yet applied." 20 C.F.R. § 404.213(a)(3) (emphasis added).[4]

According to the statute, for Stroup not to be subject to the WEP, he must have become "eligible" for his pension before 1986–i.e., in December 1985.

---

[3]42 U.S.C. § 405:

     (a) Rules and regulations; procedures. The Commissioner of Social Security shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this title, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

[4]In contrast, a person becomes "entitled" to benefits once he or she has actually stopped working and applied. *See* 20 C.F.R. 404.203.

5

Under the definition of eligibility provided by the regulation, he clearly had not. The first *month for which* he met all the requirements was January 1986. To discern the operation of the critical word "for," consider two alternatives. Had Stroup completed twenty years of service by November 30, he would have met all the requirements for his pension *for* the entire month of December. The result would be less clear had Stroup completed his twenty years of service in mid-December. In that situation, Stroup would have met all the requirements for his pension *for* part of the month of December, and arguably would still have become eligible before 1986 (since the regulation does not explicitly state that eligibility begins only in the first *full* month). Because here Stroup worked through December 31, the opposite result is indicated: He did not become eligible until January 1986. Had the regulation read, instead, that a person becomes eligible in the month *in* which he or she meets all requirements for a pension, Stroup would have had a stronger case.

Stroup argues that the § 404.213(a)(3) definition of eligibility denies the statute's plain meaning. But, as we noted, the statute is ambiguous and has no plain meaning. Thus, we must determine the degree of deference to give the SSA regulation under *Mead*. The proper level of deference depends on the circumstances of each case, including the presence of congressionally delegated

agency authority, the form of the agency action and, for those situations not clearly meriting *Chevron* deference, the factors laid out in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).[5] *Mead*, 533 U.S. at 227-35. Here, the SSA argues that its regulation is due *Chevron* deference, meaning that it should be upheld as long as it is reasonable and not contrary to clear congressional intent. *Chevron*, 467 U.S. at 842-43. Stroup agrees that "considerable weight should normally be accorded" to the SSA's statutory constructions. Appellant's Opening Br. at 10. The Supreme Court recently considered, in *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002), the degree of deference due to a statutory interpretation by the SSA in the form of a regulation formally promulgated pursuant to 42 U.S.C. § 405(a). The Court concluded that "the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time all indicate that *Chevron* provide[d]," for that case, "the appropriate legal lens." *Walton*, 535 U.S. at 222. Especially in the absence of any argument to the contrary, we believe that these same factors, including especially the undeniably interstitial nature of the question at hand,

---

[5]These other factors include "the thoroughness evident in [the agency action's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. at 140.

dictate that *Chevron* should also apply to the case before us.

Stroup provides no persuasive argument that the regulation is unreasonable. We start by noting, in disagreement with Stroup, that the language of the statute does not preclude the interpretation given it by the Commissioner. *See Walton*, 535 U.S. at 218. Stroup's other arguments also fail to rebut *Chevron*'s presumption that the SSA's interpretation of the statute should be controlling. Stroup argues that the Commissioner should follow the mandate of 20 C.F.R. § 404.213(a)(3), which requires the SSA to "consider all applicable service used by the pension-paying agency," and defer to the KPD's belief that Stroup became "eligible to retire" after his shift on December 31. The Commissioner *is* considering all applicable service, but does not have to accept KPD's statement as a valid legal conclusion when the SSA has its own definition of "eligibility" that is controlling here. Stroup also points to intra-agency documentation showing that the SSA was not always certain that the WEP applied to Stroup.[6] District Ct. Tr. at

---

[6]The relevant part of this document, entitled "Claims Folder/Material Transmittal", states:

> We need to look at the date they were eligible to receive the pension as opposed to the date they were eligible to retire, as they are not necessarily the same. If he was not eligible to retire until COB on 12/31/85, it would seem highly unlikely that he would be eligible to the pension prior to 1/1/86. The pension plan would need to provide that he could receive a pension for at least one day of December 1985 for the exemption to the met.
> There's not much in writing about this. An old NEWS item from 11/27/85 that I kept a copy of stated: 'Those eligible for either a Social Security benefit or a non-covered pension prior to 1986 are exempt from WEP. This means that a Civil Service retiree with 30 years of service who attains age 55 on December 15, 1985 is first eligible for a

40. First, upon review of the document, we do not believe it evinces any "struggle" in the SSA's interpretation and application of the WEP, as Stroup has characterized it. Second, a temporary, nonpublic uncertainty (here, an acknowledgment that there is "not much in writing" on point and the use of the qualifier "probably") can hardly bind the Commissioner in this proceeding. At most, inconsistency in an agency's position is one factor in determining how much deference is owed, *Mead*, 533 U.S. at 228, and we believe that *Chevron* deference is owed here. Finally, we note that the document's reasoning and conclusion is entirely consistent with respect to Stroup's situation. The only arguable inconsistency in the document is an internal one, and relates to whether a person qualifying for retirement in mid-December 1985 would be subject to the WEP, a question not before us.

If anything, the Commissioner has provided much evidence of the SSA's consistency in its interpretation and application of the WEP, further validating deference. For example, the SSA's Program Operations Manual System (POMS) states that for claimants to be free from the WEP under an early-out retirement provision, they "must provide evidence" that they "could have received a pension

---

pension for the month of January 1986. Therefore WEP applies.' This is similar to your situation in that even though the eligibility requirements for retirement were met in 12/85, pension eligibility (probably) did not exist until 1/86.

(The word "probably" was apparently added with a pen (under a caret) after the document was typed and printed.)

payment *for* December 1985 or earlier." POMS DG 3696.D3 (emphasis added). While the POMS does not have the force of law, it can be persuasive. *Bubnis v. Apfel*, 150 F.3d 177, 181 (2nd Cir. 1998); *Davis v. Sec'y of Health and Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989); *Evelyn v. Schweiker*, 685 F.2d 351, 352 n.5 (9th Cir. 1982). The Commissioner's interpretation is also consistent with Congressional understanding of the WEP as evinced in a conference report discussing a modification of the statute. *See* H.R. Conf. Rep. No. 100-1104 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5048, 5322 (describing "the first month the individual is eligible for both . . . pension and social security " as "the first month he or she could receive both . . . benefits if he or she applied for them–the month of 'concurrent eligibility'").

Finally, we note that our holding today is in harmony with other courts that have addressed the interpretation of the WEP. *See Johnson v. Sullivan*, 777 F. Supp. 741, 744 (W.D. Wisc. 1991) ("Accordingly, an individual who turns 62 in December . . . is 'eligible' for . . . benefits in January."); *see also Das*, 17 F.3d at 1254 (citing the above conference report and holding that Das was subject to the WEP because, although his pension plan vested prior to 1986, he could not have received benefits before 1986 since he turned 62 in 1988).

10

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.