FILED
United States Court of Appeals
Tenth Circuit

August 11, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JEANETTE A. WICKS,

      Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant-Appellee.

No. 13-1542
(D.C. No. 1:12-CV-01510-RBJ)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **HOLMES**, and **McHUGH**, Circuit Judges.

Jeanette A. Wicks, proceeding pro se, appeals the district court's judgment

affirming the Social Security Commissioner's application of the Government Pension

Offset ("GPO") provision of the Social Security Act (the Act) to reduce the amount

of Ms. Wicks' social security survivor's benefit throughout her lifetime. Exercising

jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*]    The parties have not requested oral argument. Having examined the briefs and
appellate record, the panel concludes that oral argument would not materially assist
the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).
Accordingly, the case is ordered submitted without oral argument. This order and
judgment is not binding precedent, except under the doctrines of law of the case, res
judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Background

For many years, Ms. Wicks worked for various state and local organizations covered by the Public Employees' Retirement Association of Colorado ("PERA"). During this PERA-covered employment, Ms. Wicks was exempt from paying Social Security taxes.

In March 1996, after leaving PERA-covered employment, Ms. Wicks received a lump sum payment of her PERA retirement benefits in the amount of $22,144.08, which included Ms. Wicks' contributions and matched contributions from her employers. Ms. Wicks later returned to PERA-covered employment for several years. In January 2006, she received a second lump sum payment from PERA for $4,440.82, which also included matched employer contributions.

Ms. Wicks began receiving a social security retirement insurance benefit (SSI retirement benefit) in March 2006. The Social Security Administration (the Agency) did not reduce Ms. Wicks' SSI retirement benefit to reflect the PERA lump sum payments. In June 2009, following the death of her former husband, Ms. Wicks applied for a social security survivor's benefit. At that time, the Agency informed Ms. Wicks that the GPO applied and her survivor's benefit would be reduced by the prorated amount of the PERA lump sum pension payments.[1] After an unsuccessful

---

[1]    The Agency also informed Ms. Wicks that her separate social security retirement benefit should have been reduced based upon the Windfall Elimination Provision (WEP) of the Act. Because Ms. Wicks has not challenged the Agency's

(continued)

request for reconsideration, Ms. Wicks sought a hearing before an Administrative Law Judge ("ALJ"). At that hearing in July 2011, Ms. Wicks waived her right to representation and testified on her own behalf. Ms. Wicks' efforts were successful, in part.

**A. The ALJ's Decision**

The ALJ determined that the GPO provision applied to Ms. Wicks' survivor's benefit, but only with respect to the January 2006 lump sum payment. In reaching his conclusion, the ALJ first prorated the two lump sum pension payments to a monthly value and then calculated their extinguishment dates according to actuarial tables in the Agency's Program Operations Manual System ("POMS"). For example, because Ms. Wicks was 55 at the time of the March 1996 lump sum payment, the ALJ adopted the actuarial value of 140.9 to prorate that payment. *See* POMS GN 02608.400(D)(3)(b). Specifically, the ALJ divided the $22,144.08 received in the 1996 lump sum by that 140.9 figure to arrive at the monthly value of the March 1996 PERA benefit. In addition to using the actuarial value to prorate the lump sum payments to a monthly value, the ALJ used it to calculate the date upon which the lump sum amount would be extinguished. Assuming that the "end of the prorated period for the first lump sum, as indicated by the actuarial charts, is 140.9 *months* after receipt, or December 1, 2007," Admin. R. at 25 (emphasis added), the ALJ

application of the WEP on appeal, we do not address that issue in our recitation of the facts or analysis.

- 3 -

concluded the March 1996 lump sum payment "was deemed extinguished" before Ms. Wicks became entitled to survivor's benefits in June 2009. *See id*. at 25-26.

Next, the ALJ determined that the POMS guidelines were ambiguous as to whether the GPO applied when the prorated period ended before the entitlement to benefits commenced. He therefore, resolved the ambiguity in favor of Ms. Wicks and held the March 1996 lump sum payment was not subject to the GPO. In contrast, because the January 2006 lump sum payment was not extinguished prior to Ms. Wicks' entitlement to survivor's benefits, the ALJ concluded it was subject to the GPO throughout Ms. Wicks' lifetime.

### B. The Appeals Council Decision

Concerned that the ALJ's decision may include an error of law, the Social Security Appeals Council notified Ms. Wicks that it was reviewing the decision on its own motion. *See* 20 C.F.R. § 404.969(a); *id*. § 404.970(a)(2). The Appeals Council disagreed with the ALJ's conclusion that the GPO did not apply to the March 1996 lump sum payment. It explained that where the relevant pension plan does not specify the payment period, Agency policy is to prorate the lump sum as if it were to be received monthly over a lifetime, which results in a corresponding lifetime reduction of the individual's monthly survivor's benefit. *See* 20 C.F.R. § 404.408a(a); POMS GN 02608.400(A); *see also* POMS GN 02608.400(D)(3)(b). Accordingly, the Appeals Council ordered that Ms. Wicks' monthly benefits be

recalculated.  It did not address, and, therefore, did not disturb the ALJ's finding regarding application of the GPO to the January 2006 lump sum pension payment.

Ms. Wicks sought judicial review of the Appeals Council's decision, and the district court affirmed.  *See Williams v. Bowen*, 844 F.2d 748, 749 (10th Cir. 1988) (holding that Appeals Council's decision is the Commissioner's final decision); 20 C.F.R. § 404.981.  She now appeals.

## II.    Discussion

### A.  Standard of Review

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation and quotation marks omitted).  "[W]e will not reweigh the evidence or substitute our judgment for the Commissioner's."  *Id.* (internal quotation marks omitted).

Because Ms. Wicks proceeds pro se, we liberally construe her filings. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  We will not, however, serve as her advocate.  *See id.*

**B. Analysis**

As best we can discern, Ms. Wicks raises the following challenges to the Commissioner's decision: (1) the Appeals Council erred in determining that the March 1996 prorated lump sum payment did not have a finite ending date after which the GPO would no longer reduce her survivor's benefit; (2) the Agency acted contrary to its Congressional authority in adopting rules allowing the reduction of social security benefits throughout the beneficiary's lifetime based on lump sum retirement payments from non-covered sources; and (3) the Agency violated her federal constitutional rights to due process and equal protection. Addressing these issues in turn, we first conclude that because the PERA retirement plan did not identify a specific payment period, the Agency correctly imposed the GPO for as long as Ms. Wicks is entitled to the benefit—her lifetime. Next, we hold the Agency acted within the authority delegated to it by Congress in adopting rules governing the lifetime application of the GPO to lump sum retirement payments made for unspecified time periods. Finally, we reject Ms. Wicks' constitutional claims.

### 1. Duration of the GPO

The GPO reduces the monthly Social Security benefits, including the survivor's benefit, of an individual who is also entitled to a government pension based on non-covered employment. *See* 42 U.S.C. § 402(k)(5)(A); 20 C.F.R. § 404.408a(a). Non-covered employment is employment during which the worker's wages are exempt from Social Security taxes. *See Stroup v. Barnhart*, 327 F.3d

- 6 -

1258, 1259 (11th Cir. 2003). Because Ms. Wicks did not pay social security taxes on the wages received from her government employers, the PERA lump sum payments are based on non-covered employment.

Therefore, the GPO applies and reduces Ms. Wicks' monthly survivor's benefit by "two-thirds of the amount of any monthly periodic benefit" payable based on non-covered earnings. *See* 42 U.S.C. § 402(k)(5)(A); *see also* 20 C.F.R. § 404.408a(d). The Act defines "Periodic benefit" to include "a benefit payable in a lump sum if it is a commutation of, or a substitute for, periodic payments." 42 U.S.C. § 402(k)(5)(C). There is no dispute that the lump sum PERA payments were a commutation of or substitute for periodic pension payments, and, thus, a periodic pension benefit under the Act. The Act, together with the Agency regulations and guidelines, provides instruction on converting the lump sum periodic benefit into a monthly periodic benefit for purposes of the GPO.

When an individual's pension is paid in a lump sum, the Act provides that it "shall be allocated on a basis equivalent to a monthly benefit (as determined by the Commissioner . . .)." *Id*.; *see also* 20 C.F.R. § 404.408a(a) ("If the government pension is not paid monthly or is paid in a lump-sum, we will determine how much the pension would be if it were paid monthly and then reduce the monthly Social Security benefit accordingly."). The regulations further explain, "[t]he number of years covered by a lump-sum payment, and thus the period when the Social Security benefit will be reduced," varies depending on the terms of the particular pension

- 7 -

plan. 20 C.F.R. § 404.408a(a). The terms of the pension plan dictate the duration of the reduction when they clearly indicate the lump sum payment is for a specified period. *Id.* When the payment period is not identified in the pension plan, however, the Agency will determine the reduction period on an individual basis. *Id*.

The method of determining the reduction period for a lump sum payment, and arriving at a monthly amount on an individual basis, is explained in the Agency's POMS guidelines.[2] POMS GN 02608.400(D)(3) provides that "[w]hen the entire pension is paid in a lump sum, the amount may represent a specified period of time or a 'lifetime.'" Where, as here, the pension-paying agency – *i.e.* PERA – does not itself prorate the lump sum to establish a monthly amount for GPO purposes, the Agency prorates it in accordance with its POMS guidelines. *See id*. In such circumstances, POMS GN 02608.400(D)(3)(b) directs that the lump sum be prorated in the same manner as a lump sum representing payments for a "lifetime." The method for converting a "lifetime" lump sum payment to a monthly amount is to divide the lump sum amount by an "actuarial value," as identified in the POMS table that corresponds to the worker's age on the date of the lump sum award. *See id*. And because the lump sum is prorated monthly over a lifetime, the individual's monthly

---

[2]    "The [agency's] policy guidelines are provided in the [POMS], which is a set of policies issued by the [agency] 'to be used in processing claims.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 (10th Cir. 2001) (quoting *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999)). The POMS represents the agency's own interpretation of its regulations and the statutes governing its operations. *See Lopes v. Dep't of Soc. Servs.*, 696 F.3d 180, 186 (2d Cir. 2012). The POMS are entitled to deference unless they are arbitrary, capricious, or contrary to law. *McNamar*, 172 F.3d at 766.

survivor's benefit is also reduced throughout her life. *See* POMS GN 02608.400(A)

(providing that lump sum payments made for unspecified periods be "prorated as

though it is received monthly over a lifetime"). *See also* POMS GN

02608.400(D)(3)(b). The Agency's application of the GPO to Ms. Wicks' survivor's

benefit throughout her lifetime is consistent with these guidelines.[3]

The Appeals Council's application of the relevant statute, regulations, and

POMS provisions was not arbitrary, capricious, or contrary to law and we therefore

defer to the Agency's interpretation. *See McNamar v. Apfel*, 172 F.3d 764, 766

(10th Cir. 1999). The Appeals Council applied the correct legal standards and its

decision is supported by substantial evidence.[4] Consequently, we do not disturb its

decision.

---

[3] In support of her contrary position, Ms. Wicks relies on Section (C)(5) of POMS RS 00605.360, entitled "WEP Applicability," which in its current version provides that WEP application ends "when . . . the proration of a lump sum payment based on a specified period ends." A prior version relied on by Ms. Wicks states that WEP application ends "when . . . the proration of lump sum payment ends." *See* Dist. Ct. R. at 21. Here, the PERA lump sum payments were not based on a specified period.

[4] The same analysis applies to the January 2006 lump sum pension payment, which the Appeals Council did not address, and by its silence did not disturb. Like the March 1996 lump sum payment, PERA did not specify that the January 2006 payment represented a specified period of time. The January 2006 lump sum payment is therefore prorated as if paid over a lifetime, which results in a corresponding lifetime reduction of Ms. Wicks' monthly survivor's benefit.

### 2.     Congressional Authority

Ms. Wicks next challenges the Agency's adoption of the pertinent POMS provisions, arguing that the Commissioner has not "been given congressional authority to by-pass congress and the President and rewrite the statu[t]es."[5]  Aplt. Opening Br. at 4.  While we agree with Ms. Wicks' general premise, we are not convinced the Agency has exceeded its authority.  Congress delegated to the Commissioner full power and authority to make regulations and establish procedures, not inconsistent with the Social Security Act, which are necessary to implement the provisions of the Act.  *See* 42 U.S.C. § 405(a).  In applying the GPO to periodic benefits paid on other than a monthly basis – i.e., a lump sum payment – the Act provides that such a periodic benefit "shall be allocated on a basis equivalent to a monthly benefit (*as determined by the Commissioner of Social Security*)." *Id*. § 402(k)(5)(C) (emphasis added).  Accordingly, Congress has given the Commissioner the express authority to administer the GPO in a manner determined by the Commissioner.

Our review of the Agency's "interpretation of a statute or regulation it administers is highly deferential."  *McNamar*, 172 F.3d at 766.  The Agency has adopted guidelines for the application of the GPO in situations where the period covered by a lump sum payment is unspecified by the pension plan.  Nothing in those

---

[5]     We interpret Ms. Wicks' references to "statutes" to mean the applicable POMS provisions.

guidelines directly contradicts the terms of the Act. Nor are we convinced that the Commissioner has applied the GPO in a manner that is arbitrary, capricious, or contrary to law. As a result, we reject Ms. Wicks' argument that the Agency exceeded its authority or acted contrary to law in applying the GPO.

### 3. Due Process and Discrimination Claims

Finally, Ms. Wicks complains that her constitutional rights have been violated in two respects. First she asserts she was denied her right to due process because the Appeals Council failed to respond promptly to her requests for extensions of time, failed to provide her with requested information, fabricated facts, and denied her the opportunity to appear before the Appeals Council. Second, she raises an equal protection claim, arguing that the GPO provision treats government retirees discriminatorily in comparison with private retirees.

Ms. Wicks' complaints do not constitute a denial of due process. "[D]ue process requires notice and a meaningful opportunity to be heard." *Standard Indus., Inc. v. Aquila, Inc. (In re C.W. Mining Co.)*, 625 F.3d 1240, 1244 (10th Cir. 2010). Ms. Wicks appeared and had an opportunity to be heard before the ALJ. When the Appeals Council notified Ms. Wicks of its intent to review the ALJ's decision, it further advised her that she could provide additional evidence and request to be present for oral argument. Although the Appeals Council ultimately denied her request to appear and argue, it acted within its discretion in doing so. *See* 20 C.F.R. § 404.976(c). Ms. Wicks was permitted to argue and to submit written materials to

the ALJ and that record was available to the Appeals Council. Thus, the decision to limit her participation at the Appeals Council to the submission of written materials was not a deprivation of Ms. Wicks' opportunity to be heard. Having considered the substance of Ms. Wicks' other complaints we are convinced they also do not rise to the level of a due process violation.[6]

Finally, Ms. Wicks appears to raise an equal protection claim, arguing that the GPO did not "equalize" government retirees and private retirees and instead discriminated against retirees, like Ms. Wicks, who did not pay social security taxes. In particular, she claims that if the GPO remains in effect after the full amount of the lump sum payments has been extinguished through reductions in her social security benefits, she will receive a reduction in benefits greater than the PERA retirement benefits she received based on non-covered employment. This result, she claims, treats government retirees less favorably than private retirees. Reviewing Ms. Wicks' claim de novo, *see White v. Colorado*, 157 F.3d 1226, 1232 (10th Cir. 1998), we conclude the GPO provision does not violate the Equal Protection Clause.

---

[6] Ms. Wicks argues that the Appeals Council failed to consider new evidence that she submitted to it for its review of the ALJ's decision. The Appeals Council's decision stated that "[n]o comments or additional evidence have been received." Admin. R. at 7. The Appeals Council must consider evidence submitted with a request for review if the evidence is new, material, and relates to a period on or before the date of the ALJ's decision. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003); 20 C.F.R. § 404.970(b). Failure to consider such evidence is grounds for remand. *See Threet*, 353 F.3d at 1191. Reviewing the evidence de novo, *see id.*, we conclude the evidence is not new or material and thus, there is no cause for remand.

Government retirees who have not contributed to the social security fund are not similarly situated to private retirees who have paid social security taxes on their wages. Unlike employees subject to social security taxes, Ms. Wicks had the benefit of the present value of that money. Under these circumstances, the Agency decision to treat retirees from non-covered employment, like Ms. Wicks, differently than private retirees is not discriminatory.

## III. Conclusion

The Agency applied the GPO to the March 1996 lump sum PERA retirement benefit according to its guidelines, which were adopted pursuant to the authority delegated to the Agency by Congress. Ms. Wicks has not suffered a deprivation of her constitutional rights to due process or equal protection. Accordingly, the judgment of the district court is affirmed.

Entered for the Court

Carolyn B. McHugh
Circuit Judge