[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 19-13991
Non-Argument Calendar

————————————————

D.C. Docket No. 3:18-cv-00512-LC-EMT

PATRICIA SHUE,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

————————————————

Appeals from the United States District Court
for the Northern District of Florida

————————————————

(July 7, 2020)

Before WILLIAM PRYOR, Chief Judge, MARTIN and JILL PRYOR, Circuit
Judges.

PER CURIAM:

Patricia Shue appeals the district court's order affirming the Social Security

Administration's (the "Agency") denial of her application for widow's insurance

benefits. She claims that the Administrative Law Judge ("ALJ") committed

reversible error in finding that her conviction for involuntary manslaughter in connection with her husband's death was a crime of intent that precludes her from receiving benefits as a matter of law.  After careful review, we affirm the Agency's denial of widow's insurance benefits.

## I.

Where, like here, an ALJ denies benefits and the Appeals Council denies review, "we review the ALJ's decision as the Commissioner's final decision." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).  "[W]e review de novo the legal principles upon which the Commissioner's decision is based."  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).  But we review the Commissioner's decision "only to determine whether it is supported by substantial evidence."  Id.; see 42 U.S.C. § 405(g).  "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Moore, 405 F.3d at 1211.  Our limited review does not allow us to "decid[e] the facts anew, mak[e] credibility determinations, or re-weigh[] the evidence."  Id.

## II.

First, some background on widow's insurance benefits.  Generally, the widow of a fully insured person is entitled to benefits if she is not married, has attained age 60, and files an application.  See 42 U.S.C. § 402(e)(1); 20 C.F.R.

§ 404.335; Soc. Sec. Admin., Program Operations Manual System (the "Manual" or "POMS") RS 00207.001(A)(1); see also 42 U.S.C. § 416(c) (defining the term "widow"). However, a claimant is not entitled to any survivor's benefits on the earnings record of another person if the claimant was "convicted of a felony or an act in the nature of a felony of intentionally causing that person's death." 20 C.F.R. § 404.305(b); see POMS GN 00304.060(A). This case therefore depends on whether the ALJ erred in determining that Shue intentionally caused the death of her husband.

In reviewing the ALJ's decision, we may look to the Manual,[1] which sets out a framework for reviewing particular types of homicides to determine whether they constitute the intentional taking of life. POMS GN 00304.065(B). If a claimant was convicted of involuntary manslaughter, the Manual establishes a rebuttable presumption that there was a lack of intent to take a life. Id. However, if the conviction was for voluntary manslaughter, there is no presumption and the "facts relative to the slaying must be developed" to determine if the killing was intentional. Id. That decision in turn "depends on the laws of the State in which

---

[1] The Manual is the Agency's publicly available operating instructions for processing Social Security claims. Wash. State Dep't of Soc. & Health Servs. v. Keffeler, 537 U.S. 371, 385, 123 S. Ct. 1017, 1025 (2003). As the Supreme Court has noted, the Manual's regulations and procedures are not products of formal rulemaking. Id. at 385, 123 S. Ct. at 1026. Even though the Manual does not have the force of law, the Agency's formal interpretations contained in it "nevertheless warrant respect." Id.; see Stroup v. Barnhart, 327 F.3d 1258, 1262 (11th Cir. 2003) ("While the POMS does not have the force of law, it can be persuasive.").

the charge is preferred." Id. Where state law "does not distinguish between voluntary and involuntary manslaughter," the analysis follows the steps for voluntary manslaughter, i.e., applying no presumption and developing the facts. Id.

Shue argues on appeal that because Florida does distinguish between voluntary and involuntary manslaughter, the ALJ's determination to the contrary grounded the benefits analysis in a faulty premise. She claims this legal mistake led to the ALJ's finding that her conviction was for an intentional act that disqualified her from receiving benefits, which is reversible error. Instead, she claims her act was the result of culpable negligence. Finally, Shue says the ALJ erred by "readjudicating" her criminal case.

## III.

The first issue we must address is the ALJ's finding that Florida law does not differentiate between voluntary and involuntary manslaughter. Shue argues this determination led the ALJ to misapply Florida law and err in making specific factual findings relevant to the killing to determine whether it was intentional under the Agency's standards.

Florida defines manslaughter as "[t]he killing of a human being by the act, procurement, or culpable negligence of another." Fla Stat. § 782.07(1). The statute does not, on its face, distinguish between voluntary and involuntary

manslaughter.  See id.  However, Florida law draws a line between manslaughter by act and by procurement—which equates to voluntary manslaughter—and manslaughter by culpable negligence, which equates to involuntary manslaughter. Bolin v. State, 8 So. 3d 428, 430 (Fla. 2d DCA 2009).  Florida treats only voluntary—not involuntary—manslaughter as a crime of intent.  Id.

The ALJ clearly erred in concluding that Florida law does not distinguish between voluntary and involuntary manslaughter.  See id.  But the effect of that error was harmless because the ALJ reasonably compared the scienter for involuntary manslaughter under Florida law with the Agency's definition of intent and found them to be compatible.  Cf. Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983) (noting a determination supported by substantial evidence may still be meaningless "if it is coupled with or derived from faulty legal principles"), superseded by statute on other grounds as recognized in Elam v. R.R. Ret. Bd., 921 F.2d 1210 (11th Cir. 1991).

We must look to Florida law, see POMS GN 00304.065(B), which describes culpable negligence as "gross and flagrant," or, in other words, "consciously doing an act or following a course of conduct that the defendant must have known, or reasonably should have known, was likely to cause death or great bodily injury." Fla. Crim. Jury Instr. 7.7; see also Pethtel v. State, 177 So. 3d 631, 636 n.2 (Fla. 2d DCA 2015) (describing Florida Standard Jury Instruction for Criminal Cases 7.7).

5

Florida's interpretation of the scienter required for involuntary manslaughter tracks the Agency's interpretation of the scienter for an intentional homicide. The Manual explains that the Agency has expanded on the traditional meaning of an intentional state of mind, and excludes only the following cases from an intentional homicide: (1) accidental homicide (involuntary manslaughter might fall within this exception); (2) justifiable homicide (generally self-defense); or (3) excused homicide (insane or influenced by intoxication)." See POMS GN 00304.065(A); Davis v. Sec'y of Health & Human Servs., 867 F.2d 336, 340 (6th Cir. 1989) (adopted as agency policy in SSR 89-6c, 1989 WL 251364, at *6 (Sept. 13, 1989)). Therefore, "a conviction for the indifferent performance of a voluntary act that the actor knows is potentially fatal to another, even if the death of the other is not specifically intended, disqualifies the actor from eligibility for survivor's insurance benefits." Davis, 867 F.2d at 340. The ALJ did not err by determining that a conviction for involuntary manslaughter under Florida law disqualifies a claimant from widow's insurance benefits.

To the extent Shue argues that the ALJ erred by failing to apply the presumption of lack of intent she was due based on her conviction of involuntary manslaughter, see POMS GN 00304.065(B), this error does not provide grounds for reversal. See Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Failure to apply the correct legal standards or to provide the reviewing court with

6

the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal."). This is because the Manual does not set forth a binding legal standard.[2] Stroup, 327 F.3d at 1262 ("[T]he POMS does not have the force of law . . . ."). In this scenario, our inquiry thus depends not on whether the ALJ improperly applied the Manual, but on whether the ALJ exercised reasoned decision-making by finding that the facts of the killing showed Shue had the sort of intent that bars widow's insurance benefits. See Owens v. Heckler, 748 F.2d 1511, 1514 (11th Cir. 1984) (per curiam) (explaining that an appellate court's review for substantial evidence does not result in automatic affirmance).

The ALJ acknowledged that there was evidence showing Shue's shooting of her husband was potentially accidental, which Shue continued to rely on to challenge the Agency's denial of her application for benefits. But the ALJ noted that although the jury's findings established the scienter for felony manslaughter under Florida law, "case law and relevant regulations" required him to explore the underlying facts "to determine if the crime satisfies the Agency's definition of 'intentional.'"

---

[2] We also note that the Agency has seemingly ignored its own Manual in at least one legal precedent opinion issued by the Regional Chief Counsel. In In re Donald E. S~, ~, the Agency did not expressly apply the presumption of a lack of intent when it determined that a claimant convicted of involuntary manslaughter under Florida law was precluded from receiving widow's insurance benefits. See POMS PR 02905.011(A).

7

The ALJ summarized each of the "several versions" of the events Shue told about the circumstances of her husband's death. Based on all the evidence, the ALJ found that Shue was holding the gun at the time it fired the shot that killed her husband. He described evidence that Shue "had been upset with her controlling husband" in the days leading up to the shooting and she had brought the gun downstairs "with the intention of getting her husband's attention." In applying these facts to the relevant law, the ALJ first noted that 20 C.F.R. § 404.305(b) was not limited to "specific intent" felony convictions and explained that under the Manual's guidance, "intentional" meant having "a wish or expectancy that an act will have a certain result (regardless of the actual likelihood of such result)." He went on to describe the Florida jury's conclusions based on this evidence.

The ALJ said the jury's rejection of Shue's accidental shooting defense barred a finding by the Agency of an accidental shooting. Additionally, the ALJ said the jury's dismissal of that defense required finding that Shue's actions qualified as "intentional" under the Agency's guidance. And, because the jury found that Shue "affirmatively 'used a firearm,' a deadly weapon," the ALJ in turn found that the fatal results of Shue's actions were foreseeable—and thus that she "expect[ed] that [her] act w[ould] have a certain result." See POMS GN 00304.060(B)(1). The ALJ further found that Shue's actions were not lawfully justified under the Agency's regulations, noting in part that "the record d[id] not

8

support the conclusion that she was unaware of the nature and consequences of her actions, nor d[id] the jury verdict support such [a] conclusion." Based on these findings, the ALJ ultimately decided that Shue was precluded from receiving widow's insurance benefits.

A reasonable person would accept the ALJ's findings as adequate to support a conclusion that Shue "wish[ed] or expect[ed]" that bringing a firearm downstairs with the intention of getting her husband's attention would have a certain result. See POMS GN 00304.060(B)(1); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996) (explaining that "substantial evidence" is based on a "reasonable person" standard). We therefore cannot say that the ALJ's decision was not supported by substantial evidence. See Moore, 405 F.3d at 1211 ("[R]eview precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence."); see also 42 U.S.C. § 405(g) (stating that findings supported by substantial evidence "shall be conclusive").

Neither can we say the ALJ improperly "readjudicated" Shue's criminal case. The ALJ looked to the facts surrounding the killing and relied on his interpretation of the jury's findings to reach his decision. See Davis, 867 F.2d at 338, 340–41 (holding that claimant's second-degree manslaughter conviction "falls within the regulation's definition of an intentional homicide"). This was not error.

**AFFIRMED.**

9