NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 23, 2016[*]
Decided June 24, 2016

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-3253

| | |
|---|---|
| RONALD M. HAWRELAK, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 13-3026 |
| | |
| CAROLYN W. COLVIN, | Sue E. Myerscough, |
| Acting Commissioner of Social Security, | *Judge*. |
| *Defendant-Appellee*. | |

**O R D E R**

Ronald Hawrelak appeals the district court's judgment affirming the decision of the Commissioner of Social Security to reduce his Social Security retirement benefits based on his receipt of similar benefits from Canada. Because substantial evidence supports the Commissioner's decision, we affirm.

This appeal arises under the Social Security Act's "windfall elimination provision," which reduces the benefits received by certain individuals who also receive

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

pensions for work that did not require them to pay social security taxes. *See* 42 U.S.C. § 415(a)(7); *Petersen v. Astrue*, 633 F.3d 633, 634 (8th Cir. 2011); *Stroup v. Barnhart*, 327 F.3d 1258, 1259 (11th Cir. 2003). Essentially, the provision seeks to preserve the progressive nature of the Social Security system by ensuring that the formula the agency uses to calculate benefits does not advantage high-income workers who split their careers between covered and non-covered employment over those who paid Social Security taxes for their entire careers. *See* Francine Lipman & Alan Smith, *The Social Security Benefits Formula and the Windfall Elimination Provision: An Equitable Approach to Addressing 'Windfall' Benefits*, 39 J. LEGIS. 181, 187–93, 198–202 (2013); WILLIAM R. MORTON, CONG. RESEARCH SERV., 98-35, SOCIAL SECURITY: THE WINDFALL ELIMINATION PROVISION (WEP) 1–6 (2016), https://www.fas.org/sgp/crs/misc/98-35.pdf. Although most claimants affected by the provision are former government employees who spent part of their careers in the private sector, the provision also applies to claimants who receive benefits from a foreign government based on their work (as opposed to their residence or citizenship), *see* 20 C.F.R. § 404.213(a)(3); Social Security Administration Program Operations Manual System (POMS) GN 00307.290, https://secure.ssa.gov/poms.nsf/lnx/0200307290.

Hawrelak, a naturalized American citizen from Canada, receives monthly retirement benefits from both countries. In December 2005 he began receiving $1,715.20 per month from the Social Security Administration and an additional $278.93 per month (in Canadian dollars) from the Canada Pension Plan, that country's equivalent to Social Security. These benefits were based on contributions made during the 24 years Hawrelak had worked in the United States and the 10 years he previously had worked in Canada.

Hawrelak wrote to the Social Security Administration in February 2006 seeking assurance that the Canadian benefits would not affect his Social Security benefits. The agency didn't respond until June 2007, when it informed him that his Social Security benefits would be retroactively reduced to $1,483.40 and that he would be responsible for thousands of dollars he had been overpaid. The notice attributed the overpayment to Hawrelak's receipt of "a pension based on work [that] is not covered by Social Security," and explained that this circumstance had required the agency to recalculate his benefits. The agency later agreed to waive the overpayment but has continued to pay him the reduced amount.

Hawrelak sought reconsideration of the agency's decision, and in April 2008 the agency determined that his benefits had been properly reduced under the windfall

elimination provision. An administrative law judge upheld that decision in March 2009, as did the Appeals Council in July 2011.

Hawrelak then sought judicial review in the district court, but by then the record of his hearing before the ALJ had gone missing, so the case was remanded for a new hearing. In May 2014 the ALJ again upheld the agency's reduction of his benefits. The Appeals Council rejected Hawrelak's challenge to the ALJ's decision, and the district court affirmed.

In this court Hawrelak continues to contest the applicability of the windfall elimination provision, beginning with his argument that the Canadian benefits are exempt under a "totalization agreement" between the United States and Canada. Totalization agreements provide for the grant of retirement benefits to persons who split their careers among two or more countries and thus lack sufficient periods of covered employment under each country's retirement system to qualify for benefits. *See* 42 U.S.C. § 433(c)(1)(A); *Sambataro v. Comm'r of Soc. Sec.*, No. 13-cv-8953, 2015 WL 1539046 at *2 (S.D.N.Y. Apr. 6, 2015); *Vanlerberghe v. Apfel*, 82 F. Supp. 2d 1212, 1215 (D. Kan. 2000); U.S. Soc. Sec. Admin., *U.S. International Social Security Agreements*, https://www.ssa.gov/international/agreements_overview.html (visited June 24, 2016). Hawrelak notes, as he did before the ALJ, that the windfall elimination provision does not apply to payments "by a social security system of a foreign country based on [a totalization] agreement concluded between the United States and such foreign country." 42 USC § 415(a)(7)(A)(ii).

Hawrelak, however, misapprehends the applicability of any totalization agreement to his circumstances. As the ALJ properly found, Hawrelak's two pensions are *not* based on a totalization agreement; his work history in both the United States and Canada qualified him for benefits without totalization, so the agreement does not apply to his case. *See Vanlerberghe*, 82 F. Supp. 2d at 1215 (claimant who receives retirement benefits from two countries is "not in need of the savings provisions of a totalization agreement"); *Newton v. Shalala*, 874 F. Supp. 296, 299 (D. Or. 1994) ("Because plaintiff has enough United States earnings to qualify for United States coverage, she cannot receive totalized benefits under the treaty.")

Hawrelak next contends, also as he did before the ALJ, that his employer never contributed to the Canada Pension Plan on his behalf and, therefore, that the windfall elimination provision does not apply to him. This argument is based on guidance in the agency's Program Operations Manual System, which says that the agency will not

apply the provision "i[f] only employee contributions are involved and the payment amount is based on employee contributions plus interest, i.e., a savings plan." POMS RS 00605.364.A.1.b, https://secure.ssa.gov/apps10/poms.nsf/lnx/0300605364. The ALJ rejected this argument, noting that nothing in the record supported Hawrelak's assertion that his employer did not contribute to the Canada Pension Plan.

Substantial evidence supports the ALJ's decision. Absent exceptions not relevant here, Canadian law requires employers to contribute to the Canada Pension Plan. *See* Canada Pension Plan, R.S.C. 1985, c. C-5, § 9 (requiring employers to contribute a percentage of an employee's salary to the plan); Canada Pension Plan Regulations, C.R.C. 1978, c. 385, § 7 (same). Thus, the Plan is not, as Hawrelak contends, a mere "savings plan" to which only he was required to contribute. Indeed, the same agency manual cited by Hawrelak points to the Canada Pension Plan as an example of a social security program that *is* subject to offset under the windfall elimination provision. *See* POMS GN 00307.290.C.6., https://secure.ssa.gov/poms.nsf/lnx/0200307290.

We have considered the remainder of Hawrelak's arguments—which mostly involve complaints about various procedural missteps that delayed the processing of his case—and none provides a basis for overturning the ALJ's decision. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (recognizing that "administrative error may be harmless" and that we will not remand a case when "we are convinced that the ALJ will reach the same result").

AFFIRMED.