In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 19-2099

LORRAINE BEELER, et al.,

*Plaintiffs-Appellants*,

*v.*

ANDREW M. SAUL, Commissioner of Social Security, et al.,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cv-01481 — **Sarah Evans Barker**, *Judge*.

_____

ARGUED MAY 19, 2020 — DECIDED OCTOBER 5, 2020

_____

Before EASTERBROOK, BRENNAN, and ST. EVE, *Circuit Judges*.

BRENNAN, *Circuit Judge*. The plaintiffs in this class action, dual citizens of the United States and Canada, receive monthly Canadian pension benefits. They also applied for and receive U.S. Social Security benefits. But those Social Security benefits were reduced under a statutory "windfall elimination provision" which decreases workers' payments when they split their career between employment requiring

payment of Social Security taxes (such as in the U.S.) and employment exempt from such taxes (such as in Canada).

The plaintiffs challenge the reductions as unlawful, contending the provision does not apply to them. The district court upheld the application of the provision by the Social Security Administration ("the agency") to plaintiffs and granted summary judgment to the agency. Correctly interpreted, the provision and related statutes apply to these plaintiffs and reduce their benefits, so we affirm.

## I

### A. Factual Background

Lorraine Beeler, a dual citizen of Canada and the United States, previously lived and worked in Canada and receives monthly retirement benefits from the Canada Pension Plan, that country's equivalent to U.S. Social Security. (Virtually all employees in Canada are enrolled in this government-administered pension plan, or for employees who live in Québec, the Québec Pension Plan.) Beeler worked in Canada for 19 years and contributed to the Canada Pension Plan through payroll deductions from her earnings. In 1989 Beeler moved to the United States. From 1994 until she retired in 2013, she worked at jobs on which she paid Social Security taxes. Beeler's earnings in Canada were not subject to Social Security taxes, and her earnings in the United States were not subject to Canada Pension Plan taxes. Beeler has received monthly Canada Pension Plan benefits since September 2013. The other class members had work and tax payment histories similar to Beeler.

In 2013, Beeler applied for Social Security retirement benefits based on her years of employment in the United States.

She was awarded those benefits, but the agency granted her a reduced amount because she was also entitled to monthly Canada Pension Plan benefits based on work not covered by Social Security taxation. This reduction is pursuant to a number of laws, the interpretation of which determines the outcome of this case.

### B. Social Security Statutes and Regulations

In dispute is the application of three interrelated statutes.

*First*: The windfall elimination provision ("the provision"), 42 U.S.C. § 415(a)(7)(A)(ii), states in part that an individual who becomes eligible for a monthly periodic payment "which is based in whole or in part upon his or her earnings for service which did not constitute 'employment' as defined in [42 U.S.C. § 410] … (hereafter in this paragraph … referred to as "noncovered service")" shall have their benefits recomputed. The provision excludes in part "a payment by a social security system of a foreign country based on an agreement between the United States and such foreign country pursuant to [42 U.S.C. § 433]." Under the provision the agency reduces Social Security retirement benefits for U.S. citizens who also receive monthly periodic payments based on work not subject to Social Security taxes, including foreign work. *See* Social Security Admin. pub. no. 05-10045, Windfall Elimination Provision, https://www.ssa.gov/pubs/EN-05-10045.pdf (Jan. 2020).

Some context for the provision is helpful. Under the Social Security Act ("the Act"), "workers in the United States are taxed to support the payment of [S]ocial [S]ecurity benefits to the retired … ." *Eshel v. Comm'r*, 831 F.3d 512, 514 (D.C. Cir. 2016). A retired worker in the United States is entitled to Social Security benefits based on the number of calendar

quarters she worked subject to Social Security contribution requirements over the course of her career, provided that she has accrued a minimum number of quarters of coverage. *See* 42 U.S.C. §§ 402(a), 414(a). Upon retiring, the worker receives monthly Social Security retirement benefits equal to a percentage of her "average indexed monthly earnings," 42 U.S.C. § 415(a)(1), an amount roughly equal to the employee's average monthly earnings in employment on which she paid Social Security taxes over her lifetime.

Originally the Act would have allowed a retired employee who divided her career between employment on which she paid Social Security taxes ("covered employment"), and employment exempt from such taxes ("noncovered employment")—such as jobs in foreign countries for foreign employers—to receive a total retirement income greater than a worker with similar earnings on which Social Security taxes were paid: a so-called "windfall." To address this discrepancy, Congress enacted the provision.

*Second*: "Employment" is defined at 42 U.S.C. § 410(a), including at subsection (C) as "any service performed … if it is service, regardless of where or by whom performed, which is designated as employment or recognized as equivalent to employment under an agreement entered into under [42 U.S.C. § 433] … ."

*Third*: Workers who divide their careers between different countries, and between covered and noncovered employment present certain challenges under the Social Security system, including double taxation, incomplete coverage, or loss of continuity of coverage. To address these issues, Congress amended the Act to authorize the President to enter into international agreements that establish totalization

arrangements, under which the signatory governments coordinate benefits under their pension systems. This includes the grant of retirement benefits to persons who split their careers among two or more countries. *See* https://www.ssa.gov/international/agreements_overview.html (last visited Oct. 5, 2020).

Totalization agreements must contain certain terms, including that:

- work will result in a period of coverage under either the Social Security system or the foreign country's system "but not under both," § 433(c)(1)(B); and

- a worker whose periods of coverage are combined (or "totalized") to qualify for coverage under the Social Security system will receive a pro-rated Social Security benefit amount based on the proportion of his U.S. periods of coverage, § 433(c)(1)(C).

A payment to an individual from a foreign pension system based on a totalization agreement under this section is exempt from the provision. The United States and Canada have been parties to a totalization agreement since 1984. *See* Social Security Admin. pub. no. 05-10198, Agreement Between the United States and Canada, https://www.ssa.gov/international/Agreement_Pamphlets/canada.html (Aug. 2017).[1]

Also pertinent to this case is a regulation implementing the provision. Under 20 C.F.R. § 404.213, the provision applies if the retired employee is entitled to a monthly pension "based

---

[1] The United States entered into separate totalization agreements with Canada and the province of Québec. Those agreements do not differ materially for our purposes, so they are referred to here as "the totalization agreement."

in whole or in part on [her] earnings in employment which
was not covered under Social Security." The regulation con-
tinues:

> Noncovered employment includes employment
> outside the United States which is not covered
> under the United States Social Security system.
> Pensions from noncovered employment outside
> the United States include both pensions from
> social insurance systems that base benefits on
> earnings but not on residence or citizenship,
> and those from private employers.

20 C.F.R. § 404.213(a)(3).

### C. Procedural Background

Relying on the provision and based on plaintiffs' receipt
of monthly Canadian pension benefits, the agency reduced
the Social Security retirement benefits of Beeler and the other
class members. Beeler requested a hearing before an adminis-
trative law judge who found that the agency properly applied
the provision. In 2015, Beeler sought review of the ALJ's deci-
sion by the agency's Appeals Council but was denied, render-
ing the ALJ's decision final. Before seeking review from the
Appeals Council, though, Beeler had sued the agency in fed-
eral district court on behalf of herself and eleven other simi-
larly situated Canadian Americans.

The plaintiffs alleged the agency's application of the pro-
vision to them violated its plain language, its implementing
regulation, and the U.S.–Canada totalization agreement.
Plaintiffs sought declaratory relief that the agency's interpre-
tation of the provision, its related regulation, and the totaliza-
tion agreement were unlawful. They also sought injunctive

relief preventing the agency from applying the provision based on receipt of Canada and Québec pension plan benefits, as well as recalculation of their retirement benefits and back-pay.

The agency filed a motion to dismiss, or in the alternative for summary judgment, for failure to exhaust administrative remedies.[2] The district court denied the agency's motion, concluding that exhaustion was futile because the agency adhered to its own policies. The court ruled that plaintiffs' claims were collateral to their individual claims for benefits on two grounds: their claims constituted a facial challenge to the agency's policy to reduce Social Security benefits of dual citizens, and the agency had already determined the merits of plaintiffs' benefit claims based on their individual contributions. Still, the court concluded that plaintiffs would suffer irreparable harm if not allowed to proceed, so it certified a class consisting of dual citizens whose Social Security benefits were reduced under the provision based on their or their spouses' receipt of Canada or Québec Pension Plan payments.

On the merits, the district court considered whether the provision applies given plaintiffs' Canada or Québec Pension Plan payments, and if so whether those benefits are specifically excluded from the provision. The court examined the Act's definition of "employment" under § 410(a)(C), but rejected plaintiffs' argument that the totalization agreement designates paid work in either country as covered employment or equivalent to covered employment in both countries.

---

[2] None of the eleven additional plaintiffs had exhausted administrative remedies or sued within the 60-day requirement of 42 U.S.C. § 405(g) at the time Beeler's complaint was filed.

"In fact," the court stated, "the Totalization Agreement lays down exactly the opposite rule: 'covered' in one country *ipso facto* means 'noncovered' in the other." The court continued: "Plaintiffs overlook or misunderstand the statutory command that 'employment' under any totalization agreement 'shall … result in a period of coverage' under either the foreign or the domestic Social Security system, 'but not under both.'" (quoting § 433(c)(B)(i)).

The district court also rejected plaintiffs' argument that application of the provision based on their receipt of Canada or Québec Pension Plan benefits violates the totalization agreement because Canada does not reciprocally reduce plaintiffs' Social Security benefits. To the court, "Article IV [of the agreement] says that the United States may not discriminate in the payment of Social Security benefits in favor of its own citizens against Canadians," and there is no evidence "that [the agency] applies the [provision] to Canadians … in circumstances where it would not also apply the [provision] to Americans."

The district court further concluded that plaintiffs' Canada or Québec Pension Plan benefits do not fall within an exclusion to the provision because plaintiffs receive them independently and the benefits are not based on the totalization agreement. So summary judgment was granted to the agency.[3]

---

[3] Because the district court held that the application of the provision was "lawful as a matter of the unambiguous text" of the Social Security Act and the totalization agreement, it declined to address whether the agency's interpretation of the Act was entitled to deference under *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984), or whether its interpretation of

Plaintiffs appeal the district court's grant of summary judgment, which we review de novo, *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Medical Supplies, Inc.*, 961 F.3d 942, 946 (7th Cir. 2020), as we do the questions of statutory interpretation in this case. *In re I80 Equipment, LLC*, 938 F.3d 866, 869 (7th Cir. 2019).

## II

The parties agree that the statutory and regulatory language at issue here is plain, but each side argues that plain language supports their position on whether the provision applies. They do not debate whether certain statutory terms have different meanings. Rather, they read the structure of the applicable statutes and their interplay differently.

"We interpret statutes as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts in an harmonious whole." *Owner-Operator Indep. Drivers Assoc., Inc. v. U.S. Dept. of Transp.*, 840 F.3d 879, 888 (7th Cir. 2016) (internal quotation marks omitted) (citation omitted). The "whole text" canon of statutory interpretation also "calls on the judicial interpreter to consider the entire text, in view of its structure and the physical and logical relation of its many parts." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167 (2012). So we approach this project considering the language and design of the provision as a whole and the statutes it references. *See Our Country*

the regulation implementing the windfall elimination provision was entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997). We also conclude that the relevant text is unambiguous, so we need not consider the question of agency deference.

*Home Enter., Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 785 (7th Cir. 2017).

On appeal, plaintiffs offer elaborate arguments that can be summarized into three contentions: (A) the provision does not include Canada or Québec Pension Plan benefits within its scope, so plaintiffs' Social Security benefits should not have been reduced; (B) the provision's implementing regulation exempts Canada or Québec Pension Plan benefits because they are based on citizenship or residence; and (C) applying the provision violates the U.S.–Canada totalization agreement.

**A**

First up are the parties' differing interpretations of the statutes. Each side offers detailed arguments that are abridged here.

Plaintiffs admit the provision applies to workers who receive foreign pension payments from foreign governments for services that do not constitute employment. Plaintiffs read language in the provision at § 415—"which is based … upon … earnings for service which did not constitute employment as defined in [§ 410] … (hereafter in this paragraph … referred to as "noncovered service")"—to define the noncovered service to which the provision applies. In contrast, the provision should not apply to foreign pension payments arising from service that is employment, in which they argue they engaged.

To ascertain whether their benefits fit within that language from § 415, plaintiffs look to § 410(a)(C), which defines employment as "service, regardless of where or by whom performed, which is designated as employment or recognized as

equivalent to employment under an agreement entered into under [§ 433]." This leads the plaintiffs to the totalization agreement between the United States and Canada, enacted under § 433, to resolve whether their services in Canada would be designated as, or recognized as equivalent to, employment.

From plaintiffs' review of certain passages in the totalization agreement—including Article I subsection 6 (recognizing employment earnings as a "period of coverage"), Article II(1)(b)(ii) (recognizing the Canada Pension Plan as one of the "applicable laws" for the totalization agreement), and Article V (which states "coverage" includes an employed person who works in either country)—they conclude that their service in Canada meets the definition of employment. So, they contend, the provision does not apply to reduce their Social Security benefits.

The agency reads the provision's language and related statutes otherwise. The plaintiffs' work in Canada was noncovered service on which no Social Security taxes were paid, argues the agency, so the provision applies to reduce their Social Security benefits.

To the agency, the provision's language at § 415(a)(7)(A)(ii) equates "service which did not constitute 'employment' as defined in [§ 410]" with noncovered service. The agency maintains this interpretation is consistent with the letter of § 410, and courts have routinely construed "employment" under § 410 as consistent with "covered employment," that is, work on which Social Security taxes were paid. Plaintiffs' work in Canada for Canadian employers on which they did not pay U.S. Social Security taxes should be viewed as

noncovered employment under § 410, per the agency, and therefore the provision applies to reduce plaintiffs' benefits.

The agency disagrees with the plaintiffs that the totalization agreement informs the interpretation of these statutes. The Act's definitions of "employment," "coverage," and "period of coverage" apply for all purposes, according to the agency, including application of the provision. To the agency, if plaintiffs' work fell within § 410(a)(C), their work would have been subject to Social Security taxes. That statute encompasses services in Canada where the two countries agree those services should be subject to U.S. Social Security taxes, not services performed in Canada never subject to those taxes.

We conclude that the provision's text at § 415(a)(7)(A)(ii) is properly read as matching "service which did not constitute 'employment' as defined in section 410" with "noncovered service" on which Social Security taxes were not paid. The provision's reference to "employment" and § 410 is clear and unambiguous, and its context does not counsel otherwise. While § 410 does not expressly define "covered employment," case law recognizes that phrase includes service performed for an American employer either within or outside the United States, and that "noncovered employment" includes service not subject to Social Security taxes which provides the retired employee pension benefits. *See, e.g., Stroup v. Barnhart*, 327 F.3d 1258, 1259 (11th Cir. 2003) (Cudahy, J., sitting by designation) (noting that Congress enacted the provision to eliminate "'double dipping' that accrued to workers who split their careers between employment taxed for Social Security

benefits ('covered') and employment exempt from Social Security taxes ('noncovered')").[4]

Plaintiffs (or their spouses) were employed by non-American employers in Canada or Québec for some period during their careers. These non-American employers provide plaintiffs with monthly Canada or Québec Pension Plan benefits. Under the plain language of § 433(c)(1)(B), plaintiffs are entitled to receive Social Security benefits from the country to which they paid taxes during their employment. That means plaintiffs may receive Canada or Québec Pension Plan benefits based on their time of service to an employer there (which they do), and from the United States based on their time of service to an American employer (which they also do). And because plaintiffs' work in Canada was subject to Canada or

---

[4] Other federal courts recognize this same "covered" versus "noncovered" distinction when interpreting the provision, albeit while construing a different exception to it, § 415(a)(7)(A)(ii)(III). *See Larson v. Saul*, 967 F.3d 914, 918–19 (9th Cir. 2020) (concerning uniformed services and its application to retired dual-status military technicians who are also federal civilian employees). While the circuits differ in their interpretation of that exception, all of those courts recognize and respect the "covered" versus "noncovered" distinction while interpreting the provision. *Id*. at 920–21 (reviewing cases from the Sixth, Eighth, Tenth, and Eleventh Circuits). So we can conclude this distinction is integral to interpretation of the provision.

The dissent argues *Stroup* and *Larson* are examples of cases describing service that is not employment (covered or noncovered), not employment as noncovered. *Dissent* at n. 2. That confuses the application of the definition with its recognition. Both decisions (and the numerous cases cited in *Larson*, 967 F.3d at 920–21) recognize, for the provision, the distinction between "covered employment" as service subject to Social Security taxes, and "noncovered employment" as service exempt from those taxes.

Québec Pension Plan taxes, but not Social Security taxes, their work in Canada constitutes noncovered service under the Act.

Plaintiffs argue their work in Canada falls within the definition of § 410(a)(C) as "service, regardless of where or by whom performed, which is designated as employment or recognized as equivalent to employment under an agreement entered into under section 433 of this title." To plaintiffs, the U.S.–Canada totalization agreement, authorized by § 433, recognizes paid work in both countries as equivalent to employment. Under this expansive view, plaintiffs assert that failure to recognize their work as employment under the totalization agreement violates its terms.[5]

If plaintiffs' work fell within § 410(a)(C), then it would have been subject to Social Security taxes under the totalization agreement. This subsection allows Social Security taxes on work performed by foreign citizens in a foreign country, when the United States and the foreign country have agreed under the totalization agreement that the work should be subject to taxes only under the U.S. system. So this subsection would include services performed in Canada when that country and the United States agree those services should be subject to Social Security taxes. This subsection would not apply to services performed in Canada that were never subject to Social Security taxes, such as plaintiffs' work here. If

---

[5] Like statutory interpretation, we "'ascertain the intent of the parties' [to an international agreement] by looking to the document's text and context." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 11 (2014) (quoting *United States v. Choctaw Nation*, 179 U.S. 494, 535 (1900)). Totalization agreements established under section 433 of the Act are interpreted the same way. *Eshel*, 831 F.3d at 518.

plaintiffs' position was correct—that the totalization agreement recognizes paid work in both countries as "employment"—then plaintiffs' work in Canada would have been subject to Social Security taxes. It was not, as plaintiffs do not dispute.

Plaintiffs' arguments that the totalization agreement sets the definitions of "employment," "coverage," and "period of coverage" are *hysteron proteron*: they reverse the logical order. Neither § 433 nor any sections in the agreement purport to define these terms or change their meaning under the Act. The agreement says nothing about the meaning of "employment" in § 410, or that paid work in both countries is equivalent to "covered employment." The agreement does not change either country's definitions of key terms under their respective retirement systems. The opposite is true: Article I subsection 11 of the agreement states that "[a]ny term not defined in this Article has the meaning assigned to it in the applicable laws," which according to Article II of the agreement are the Social Security Act and the Canada or Québec Pension Plans.

As an instance supporting their position, plaintiffs contend the totalization agreement's definition of "period of coverage" in Article I designates employment or its equivalent to include what takes place in both Canada and the United States. But plaintiffs' reading cannot be reconciled with the text of § 433, which in setting out totalization agreements provides that employment (or its equivalent) in the Social Security system or system of a foreign country that is party to a totalization agreement "shall … result in a period of

coverage" under either country's system, "*but not under both.*" *See* 42 U.S.C. § 433(c)(1)(B)(i) (emphasis added).

Other examples the plaintiffs offer from the totalization agreement also do not support the conclusion that their work in Canada was covered service. The agreement's definition in Article I subsection 6 of "period of coverage" relates to coverage of a spouse or dependent under U.S. law, and for other articles which govern when and how a worker's services should be totalized to establish benefit eligibility in the United States or Canada. In limited circumstances under this definition a certain period of coverage in one country may count as coverage in the other, but nothing in the agreement states as a general rule that a period of coverage in Canada is identical to or equivalent with a period of coverage in the United States.

The same is true with Article II(1)(b)(ii) of the totalization agreement, which recognizes the Canada Pension Plan as one of the "applicable laws" for the agreement, but which does not redefine "employment" or "coverage." Just so with Article V of the agreement, which focuses on the place of employment to determine which country's laws govern: "Except as otherwise provided … an employed person who works in the territory of one of the Contracting States shall … be subject to the laws of only that Contracting State." This definition is specific to the agreement's explanation of when and where an employee's services should be totalized to establish benefit eligibility. Based on that section, an employee working in Canada accrues coverage subject to Canada's pension laws, and

an employee working in the United States accrues coverage subject to the Act and its implementing regulation.

None of these sections in the totalization agreement establish that "employment" includes plaintiffs' work in Canada. Each is for a limited purpose under the agreement, not for all purposes under the Act.

The totalization agreement is intended to aid in the cooperation between two countries who have their own laws and pension systems. It helps coordinate between the Social Security system and the Canada Pension Plan at points of intersection—for example, to avoid problems with dual taxation, or with continuity of benefits—but not for all purposes. The agreement does not work backward to alter the meaning of the terms in the Act, nor does it upend the fundamental definition of "covered employment" recognized by so many courts that have interpreted the provision, which in turn would affect whether the provision applies to plaintiffs.

Plaintiffs maintain they do not claim entitlement to Social Security retirement benefits based on their Canadian employment. But if so long as a totalization agreement is in place and work performed in a foreign country constitutes "employment" under the Act, then workers can claim benefits from a sovereign that did not tax them to fund those benefits. The district court correctly reasoned that such a result would follow if a totalization agreement—for all purposes—made Canadian employment subject to Canadian pension taxes equivalent to U.S. employment subject to Social Security taxes.

Under plaintiffs' reading of the statutes and totalization agreement, all periods of coverage under the foreign pension

system would translate into periods of coverage under the Act. Plaintiffs say their interpretation does not create a windfall. But if not a windfall, plaintiffs' position would at least give them a significant advantage by granting benefits for employment on which Social Security taxes were not paid. That would also erase the distinction between work performed in a foreign country and work in the United States. Then there would be no need to totalize—to combine periods of coverage to establish a workers' eligibility for benefits, or to prevent double taxation—the very reason for a totalization agreement. Such an interpretation would also violate the presumption against ineffectiveness: a textually permissible interpretation that furthers rather than obstructs a text's purpose should be favored. *See* SCALIA & GARNER, READING LAW 63–65.

Also under plaintiffs' reading, if "employment" does not mean "covered employment," it would mean any compensated services. Separation of powers problems would then arise, as the totalization agreement would be setting the Act's definitions for purposes of awarding benefits, with the President through an international agreement obligating the U.S. Treasury, notwithstanding Congress setting those definitions under the Act. In effect, the U.S. would be setting its Social Security payments based on another country's definition of "employment"—a step too far.

Our dissenting colleague's interpretation suffers from the same failings as the plaintiffs', reasoning backward from the totalization agreement to determine applicability of the provision. Maintaining there is a distinction between "coverage" and "employment," the dissent reads the agreement as "allocating" or "assigning coverage of work that is already

predesignated as employment by the local laws of *either* country." *Dissent* at 8. Borrowing Canada's definition of "employment," the dissent reads § 410(a)(C) as recognizing a hypothetical detached worker's services as qualifying as employment under the U.S. Social Security Act. *Id.* at 8. So according to the dissent, the detached worker's (and Beeler's) employment is "not 'noncovered service' that triggers the Provision." *Id.* at 11.[6]

The dissent's construction is awkward for a number of reasons. Rather than "coverage" and "employment" as separate concepts, the statutes under interpretation do address the relation between them. The provision at § 415 references § 410 (which is titled and defines "employment") as part of its definition of "noncovered service." And § 433(a)(1)(B)(i) speaks to when "employment … shall … result in a period of coverage … ." Even more, § 433 expressly states that coverage can be under the Act or the laws of the foreign country "but not under both." To say the agreement defines coverage but the Act does not is to ignore this federal statutory requirement which speaks directly to coverage. The same problems discussed above with the plaintiffs' interpretation afflict the dissent's reading. Contradictions arise, such as the statement that "'noncovered service,' … does not mean service that is not covered." *Dissent* at 2. At bottom, such a reading is certainly not the symmetrical, coherent, and harmonious whole

---

[6] Unlike the hypothetical detached worker described in the dissent, who is not a U.S. citizen, Beeler has dual American and Canadian citizenship.

which is the goal when interpreting statutes. *Owner-Operator Indep. Drivers Assoc.*, 840 F.3d at 888.

Our textual analysis controls, as few cases involve the application of the provision based on foreign pension payments.[7] Plaintiffs cite two decisions, *Eshel v. Comm'r of Internal Revenue*, 831 F.3d 512 (D.C. Cir. 2016), and *Erlich v. United States*, 104 Fed. Cl. 12 (Ct. Cl. 2012), as cases that recognize the bilateral nature of totalization agreements under which employment in one country is equivalent to employment in the other. But these decisions are distinguishable from the facts here. Neither involves the provision. They also conclude that under a totalization agreement the purposes for which employment in one country is treated as employment in another are limited, like avoiding dual taxation or calculating benefit eligibility, and not for all purposes. *Eshel*, 831 F.3d at 514; *Erlich*, 104 Fed. Ct. at 17–18.

In summary, the provision modifies the standard Social Security benefit formula for an individual who also receives a monthly periodic payment based on earnings for service which did not constitute employment as defined in § 410, referred to as noncovered service. *See* § 415(a)(7)(A). The

---

[7] In unpublished orders involving similar circumstances, this court has affirmed the agency's reliance on the provision to reduce a claimant's Social Security retirement benefits. *Kamyk v. Berryhill*, 695 F. App'x 947, 947–49 (7th Cir. 2017) (affirming agency's decision relying on provision's plain language to reduce a dual citizen's Social Security benefits due to her receipt of Polish retirement benefits); *Hawrelak v. Colvin*, 667 F. App'x 161, 162–63 (7th Cir. 2016) (affirming agency's decision to reduce a dual citizen's Social Security benefits due to her receipt of Canada Pension Plan benefits).

totalization agreement does not designate work in Canada on which no Social Security taxes are paid as employment or equivalent to employment. Because plaintiffs' work in Canada is not considered "employment" under § 410, the provision of § 415 applies and reduces plaintiffs' Social Security benefits.

Finally on this point, in support of their positions the parties offer various arguments from the legislative history. In interpreting statutory language, the court adopts an agency's interpretation if it is "based on a permissible construction of the Act." *Barnhart v. Walton*, 535 U.S. 212, 218 (2002). The agency's interpretation here meets that standard. When text is clear and unambiguous, "the court must give it effect and should not look to extrinsic aids for construction." *In re Robinson*, 811 F.3d 267, 269 (7th Cir. 2019). Because the plain meaning of these statutes resolve this question, we need not look beyond the text to consult legislative history. *See Conroy v. Aniskoff*, 507 U.S. 511 (1993); *see generally United States v. Rodriguez*, 460 F. Supp. 2d 902, 909–10 (S.D. Ind. 2006) (noting courts will look beyond text of a statute only when its meaning is not plain, statutory context or structure as a whole reveals ambiguity, or giving effect to plain meaning will lead to illogical and absurd results).

**B**

Plaintiffs also argue that the regulation implementing the provision, 20 C.F.R. § 404.213, exempts Canada or Québec monthly pension benefits because they are based on citizenship or residence. Under the regulation, the provision applies if the retired employee is entitled to a monthly pension "based in whole or in part on [her] earnings in employment which

was not covered under Social Security." The regulation goes on:

> Noncovered employment includes employment outside the United States which is not covered under the United States Social Security system. Pensions from noncovered employment outside the United States include both *pensions from social insurance systems that base benefits on earnings but not on residence or citizenship*, and those from private employers.

20 C.F.R. § 404.213(a)(3) (emphasis added).

"A statute and its implementing regulations should be read as a whole and, where possible, afforded a harmonious interpretation." *Carmichael v. The Payment Center, Inc.*, 336 F.3d 636, 640 (7th Cir. 2003). The letter of this regulation is consistent with the clear and unambiguous text of the provision, which states it applies to payments based on "noncovered service."[8] Also, the provision does not draw any distinctions based on where the noncovered service was performed.

Plaintiffs contend that the agency's application of the provision to their Social Security benefits violates the sentence of the regulation emphasized above. To plaintiffs, the Canada or Québec monthly pension benefits are based on both earnings *and* residence or citizenship, so the provision should not apply to them.

---

[8] In contrast, our dissenting colleague interprets these statutes differently while agreeing with our interpretation of this regulation. *Dissent* at n.1.

But plaintiffs stretch when they argue that the Canada or Québec Pension Plans are residence- or citizenship-based. None of the plaintiffs currently reside in Canada, and they continue to receive Canada or Québec monthly pension benefits, which undercuts plaintiffs' assertion. And Canada has the Old Age Security program which is residence-based. It provides payments to seniors funded out of general tax revenues. *Old Age Security: Overview*, https://www.canada.ca/en/services/benefits/publicpensions/cpp/old-age-security.html (last visited Oct. 5, 2020). This program pays benefits regardless of employment history, unlike the Canada or Québec monthly pension benefits which depend on an individual's employment history. The agency's operations manual also reflects this distinction. *See* Social Security Administration Program Operations Manual System, GN 00307.290.C.3; *see also id.* C.6 (noting Canada has a two-tiered social security system with payments under the Old Age Security program as residence-based to which the provision is not applied, in contrast with the Canada or Québec Pension Plans which are earnings-based and to which the provision is applied).

To support their interpretation of the regulation, plaintiffs cite *Rabanal v. Colvin*, 987 F. Supp. 2d 1106 (D. Colo. 2013), in which a district court reversed an ALJ's finding that the plaintiff's Spanish pension benefits were subject to reduction under the provision. *Id.* at 1108. Plaintiffs point to a statement in *Rabanal* that 20 C.F.R. § 404.213(a)(3) precludes application of the provision to payments from foreign pension systems that base benefits in part on residence or citizenship, "regardless of whether [the pension] is also based on earnings. *Id.* at 1112. To plaintiffs, this statement shows that the agency misinterpreted and misapplied the provision's implementing

regulation, as here plaintiffs claim their benefits are based on citizenship.

But *Rabanal* is not persuasive. The statement from that case on which plaintiffs rely is dictum; that case's holding was that the provision applied only to noncovered benefits on "earnings" and that the agency erred by equating "earnings" with "work." *Id*. at 1112. No court has adopted *Rabanal*'s dictum on this point, and we also decline to do so because it runs contrary to the plain text of the provision and the totalization agreement. Even more, in *Rabanal*, the agency had conceded that the claimant's Spanish pension benefits were based on his citizenship status. *Id*. at 1112. The agency has made no such concession here, and points to decades of interpretation to the contrary.

We are bound by the clear text of the Act and its implementing regulation. The regulation cannot be read to mean that only pensions based exclusively on earnings will be subject to the provision. Such an interpretation would be contrary to the provision's plain language, which would apply when a claimant also receives a pension payment "based … in part" on factors other than noncovered service. 42 U.S.C. § 415(a)(7)(A)(ii). The agency's interpretations of the provision and its implementing regulation were permissible, as was its application of the provision to reduce plaintiffs' Social Security benefits.

## C

According to plaintiffs the agency's reduction of their Social Security benefits also violates the totalization agreement between the United States and Canada. They contend the provision should not apply because their Canada or Québec

Pension Plan benefits are "payment[s] by a Social Security system of a foreign country *based on* an agreement concluded between the United States and such foreign country pursuant to section 433 of this title …" § 415(a)(7)(A)(II) (emphasis added). Such benefits are exempt from application of the provision as payments made pursuant to the countries' express wishes.

But plaintiffs' foreign pension benefits are based on their employment in Canada, not on the totalization agreement. There is no dispute that plaintiffs are entitled to those benefits, regardless of the agreement. And even if there was no agreement, plaintiffs would still receive their Canada or Québec Pension Plan benefits because those benefits are independent of the agreement and firmly rooted in the Canada or Québec Pension Plan systems. Those payments do not rely on the existence of the totalization agreement for their validity.

Plaintiffs cannot have it both ways. Either their Canada or Québec Pension Plan benefits are merely a creation of the agreement between the United States and Canada (a conclusion that would have significant consequences moving forward), or they are established based on their years of service to their foreign employers, independent of any international agreements. We conclude they are the latter, and therefore neither "based on" the totalization agreement nor exempt from application of the provision. Because plaintiffs' Canada or Québec Pension Plan benefits are not based on the agreement, plaintiffs' employment in Canada does not qualify as covered employment under the Act, and the agency correctly applied the provision to the Social Security benefits.

Plaintiffs also argue that applying the provision violates the totalization agreement because Canada does not

reciprocally reduce plaintiffs' Canada or Québec Pension Plan benefits based on their receipt of Social Security benefits. Article IV of the totalization agreement provides that nationals "who reside in the territory of either Contracting State shall, in the application of the laws of a Contracting State, receive equal treatment, with respect to the payment of benefits, with the nationals of that Contracting State." Article IV requires that the United States give equal treatment to American and Canadian citizens living in the United States or Canada when paying Social Security benefits to qualified individuals. That section of the agreement prohibits the United States from discriminating in the payment of Social Security benefits in favor of its own citizens against Canadians or certain other non-Americans. But plaintiffs have presented no evidence that the agency applies the provision to Canadians when it would not also apply the provision to Americans. Without more, this assertion does not prevail.

Equal treatment under Article IV of the totalization agreement requires that the United States treat its citizens and Canadian citizens the same in the payment of benefits. The United States does that. That does not mean the United States cannot apply the provision unless Canada has a windfall provision of its own. That is not why countries enter into a totalization agreement. There is no requirement that countries have the same laws. Rather, Article IV prevents one country to the agreement from discriminating against the citizens of another country when benefits are awarded.

## III

The agency correctly ruled that plaintiffs' Canadian employment was noncovered under the Social Security Act, and thus that the provision applied to reduce their Social Security

benefits. The district court properly granted summary judgment to the agency, so we AFFIRM.

ST. EVE, *Circuit Judge*, dissenting. The Social Security Commissioner and the majority hang their hat on a simple proposition: when the Social Security Act (the Act) refers to employment, it means "covered employment." Lorraine Beeler contends that her work in Canada was "employment," as defined in 42 U.S.C. § 410(a), but she concedes that it was neither covered by the Act nor taxed by the United States. The majority and the Commissioner dismiss her argument as essentially a contradiction, but nothing in the text of § 410(a) defines employment in terms of coverage or taxation. Instead the Act does the opposite, defining coverage and taxation in terms of employment. Because the majority's analysis rests on an unsupported premise to exclude Beeler's work from the definition of employment, I respectfully dissent.

The facts are straightforward. Between 1970 and 1989, Beeler was a Canadian citizen who worked in Canada and accrued benefits under the Canada Pension Plan. She then moved to the United States, where she eventually became a U.S. citizen. While in the United States, she worked and obtained sufficient quarters of coverage under the Act so that she became entitled to Social Security benefits based solely on her work in the United States. In other words, she did not need to "totalize" her Canadian and U.S. contributions under the Canadian-American Totalization Agreement (the Agreement). When she retired and sought her Social Security benefits, though, she received less money than she expected. The Social Security Administration had reduced her benefits under the Windfall Elimination Provision (the Provision), 42 U.S.C. § 415(a)(7)(A), because her work that contributed to the Canada Pension Plan was not covered by the Act.

The dispute in this appeal centers on the relationship be-
tween two closely related concepts in Social Security law: em-
ployment and coverage. Beeler admits that the Act did not
cover her work in Canada and that she did not pay U.S. taxes
on wages earned through that work, but she argues that this
work was nevertheless "employment" within the meaning of
the Act. The Commissioner contends, and the majority agrees,
that employment means covered employment. They then
work backwards from their proof of the indisputable (and un-
disputed) fact that Beeler's work in Canada was not covered
or taxed to reason it must, therefore, not have been employ-
ment. If these two concepts are not indelibly linked, though,
this reasoning crumbles. None of the majority's concerns
would result from Beeler's work being employment but not
covered. No one would receive benefits without paying taxes
and totalization agreements would not be made pointless be-
cause coverage—not employment—determines benefits, 42
U.S.C. § 415(a), and totalization agreements combine periods
of *coverage* not periods of employment. *Id.* § 433(c)(1)(A).

The Provision is different. Although its benefit-reduction
formula applies to those who receive payments based on
earnings from "noncovered service," that phrase does not
mean service that is not covered. Instead, Congress explicitly
defined noncovered service to mean service that "did not con-
stitute '*employment*.'" 42 U.S.C. § 415(a)(7)(A) (emphasis
added). So, if Beeler is correct that her service in Canada was
employment, even if not covered, then her Canada Pension
Plan benefits do not trigger the Provision by its plain terms.[1]

---

[1] The regulations implementing the Provision, though, do apply it to
"[n]oncovered employment," which includes "employment outside the

When the Commissioner and majority respond that employment means covered employment, they gloss over how the Act really works. 42 U.S.C. § 410 provides a specific definition of employment. Then, 42 U.S.C. § 409 defines wages to mean "remuneration … for employment." Finally, anyone who earns a certain amount of wages in a year obtains a quarter of *coverage* under 42 U.S.C. § 413. (An identical logic plays out under the Federal Insurance Contributions Act (FICA) to collect taxes to pay for social security benefits. *See* I.R.C. §§ 3101, 3121(a)–(b).) This is a causal chain. Employment leads to wages leads to coverage and taxation. It is not, as the majority concludes, coverage and taxation that make service qualify as employment, such that anything that is not taxed is not employment.[2]

---

United States which is not covered." 20 C.F.R. § 404.213(a)(3). This excludes Beeler even under her argument. (The majority rightly rejects her contrary interpretation of this regulation.) The Commissioner, though, does not argue that any part of the Provision, let alone its clear definition of "noncovered service" is ambiguous such that we should defer to this regulatory shift in language. All the regulation does, then, is concede that "noncovered employment" exists, undermining the supposed contradiction Beeler falls into by insisting her work was employment but not covered. Indeed, if the majority is right that employment means only covered employment, it is the agency that contradicts itself with regulations addressing "noncovered covered employment."

[2] The majority's examples of cases referring to employment as "noncovered" are really describing service that is not employment, covered or otherwise. *See Stroup v. Barnhart*, 327 F.3d 1258, 1259 (11th Cir. 2003) (state police officer, excluded from employment definition under 42 U.S.C. § 410(a)(7)); *Larson v. Saul*, 967 F.3d 914, 920–21 (9th Cir. 2020) (collecting cases about inactive military duty not included in employment definition under § 410(l)(1)(B)).

The majority and the Commissioner reach their conclusion by emphasizing that work, that like Beeler's is covered by the Canada Pension Plan, cannot be covered by the Act. Beeler, though, does not argue otherwise. She readily admits that this result follows explicitly from the text of the Act:

> [E]mployment or self-employment, or any service which is recognized as equivalent to employment or self-employment under this subchapter or the social security system of a foreign country which is a party to such agreement, shall, on or after the effective date of such agreement, result in a period of coverage under the system established under this subchapter or under the system established under the laws of such foreign country, but not under both.

42 U.S.C. § 433(c)(1)(B)(i). (The same thing again happens on the tax side, as wages are exempt from FICA taxes if coverage is assigned to another country under a totalization agreement. *See* I.R.C. § 3101(c).) This rule means service can finish the causal chain and lead to coverage in only one system, but nothing in the text of these sections prevents services from being employment under both systems.

The Agreement's implementation of § 433(c)(1)(B)(i), titled "Provisions on *Coverage*," demonstrates the distinction between coverage and employment. Agreement with Respect to Social Security, Can.-U.S., 35 U.S.T. 3405, 3408 https://www.ssa.gov/international/Agreement_Texts/canada.html (emphasis added). This part of the Agreement sets out a series of choice-of-law provisions, starting with a default rule: "Except as otherwise provided in this Article, an *employed* person who works in the territory of one of the Contracting States shall, in respect of that work, be subject to the

laws of only that Contracting State." *Id.* Art. V, § 1 (emphasis added). Then the Article provides several exceptions. Article V, § 2, for example, addresses what is called a detached worker. An "employed person" who works in one country, covered by that country's laws, and who is temporarily assigned to work in the territory of the second country maintains his coverage in the first country. *Id.* Art. V, § 2.[3]

The Agreement thus works in two sequential steps—the employment step, governed independently by each country's local laws, and the coverage step, governed jointly by the Agreement itself in compliance with § 433(c)(1)(B). Both § 1 and § 2 use the phrase "employed person" to identify those whose coverage is assigned to one country or the other. Neither provision defines what "employed" means, though, and neither does any other part of the Agreement. As an undefined term, then, it "has the meaning assigned to it in the applicable laws." *Id.* Art. I, § 11. Applicable laws, in turn, mean specified portions of the Act and the Internal Revenue Code for the United States, and for Canada, the Canada Pension Plan and Old Age Security Act. *Id.* Art. II, § 1.

That brings us to the meat of this appeal—the Act's definition of "employment." Before 1983, just two definitions existed, both of which still apply today. Definition (A) is "service … by an employee for the person employing him, irrespective of the citizenship or residence of either, (i) within the United States, or (ii) on or in connection with an American vessel or American aircraft …." 42 U.S.C. § 410(a). Definition (B) is "service … outside the United States by a citizen or resident of the

---

[3] Like the majority, I refer only to the Canadian Agreement because the Québécois Agreement is materially identical.

United States as an employee (i) of an American employer …
or (ii) of a foreign affiliate … of an American employer ….” *Id.*
Losing some of the nuance, the two definitions simply mean
that service qualifies as employment if it was performed ei-
ther (A) in the United States, regardless of the parties' citizen-
ship or residence or (B) by a U.S. citizen or resident for an
American employer, regardless of location.

The problem Congress noticed in 1983 was that these two
definitions omitted some of those who the United States had
agreed to cover under a totalization agreement. *See* H.R. Rep.
No. 98-25 at 75, *as reprinted in* 1983 U.S.C.C.A.N. 219, 294. As
an illustration, take a hypothetical detached worker in Can-
ada who is not a U.S. citizen or resident or who is not working
for an American employer. While working within the United
States, he accrues Social Security coverage because his service
qualifies as employment under definition (A), regardless of
his or his employer's citizenship. His company then tempo-
rarily assigns him to work in Canada, where he resides for
that period. This temporary placement no longer fits into def-
inition (A) because his work is no longer “within the United
States” and definition (B) cannot apply if he is neither an
American citizen or resident nor working for an American
employer. If his service is not employment, he cannot start the
causal chain outlined above and accrue quarters of coverage
under the Act. On the Canadian side, his work is employ-
ment, but he is not covered by the Canada Pension Plan. Arti-
cle V, § 2 says that a detached worker is subject to the laws of

only the country where he was originally employed. He is locked out on both sides of the border.[4]

Beeler and the Commissioner agree that Congress solved the problem of this detached worker by adding definition (C) to § 410. Under this third definition, employment also means "service, regardless of where or by whom performed, which is designated as employment or recognized as equivalent to employment under an agreement entered into under section 433 of this title." 42 U.S.C. § 410(a). Beeler contends that her work in Canada qualifies as employment under this definition, and at least in light of the arguments presented here, she appears to be right.

What is important for Beeler is *how* definition (C) fixed the problem for the detached worker. One might assume from the majority's opinion that the challenge in this case is how to interpret definition (C) so that it includes Beeler. But that is looking at only half the picture. It would be easy to exclude Beeler just by saying that definition (C) means nothing at all. As the Commissioner notes, the Canadian-American Agreement does not designate *anything* as employment, it merely assigns coverage, so perhaps the statute is just meaningless (at least as applied to this one agreement). We cannot, however, dismiss definition (C) because everyone agrees that the detached workers have used it to receive coverage for the last 37 years. The definition must mean something, so the question the majority and the Commissioner really must answer is

---

[4] In reality, Article V has failsafe provisions to prevent a total lockout, but it does so by reassigning this hypothetical worker's coverage to Canada, contrary to the signatories' intent. *See* Agreement, Art. V, §§ 8–9.

how definition (C) includes the detached worker but excludes Beeler.

Nothing in the text of § 410(a) distinguishes between them. Take a detached worker identical to Beeler in nearly every way: both Canadian citizens, residing in Canada, working in Canada for a Canadian employer (indeed it could be the *same* employer). All that separates the two is that Beeler started her work in Canada, and the detached worker started in the U.S. office before his employer temporarily transferred him to the Canadian office. That distinction is all the difference for Article V's provisions on *coverage*, but it does not fit anywhere in § 410(a)'s definition of *employment*.

Definition (C) includes Beeler's and the detached worker's services for the same reason: their work is designated as employment under the Agreement, as they are both "employed person[s]" under their respective sections of Article V. This point is far subtler than the majority gives it credit. It is not that Article V or other references to employment in the Agreement creep in and modify the definition of employment in the U.S. Code. Rather, the employment is designated "under" the Agreement because the Agreement recognizes it as employment and allocates its coverage. This follows from the fundamental structure of the Agreement, which assigns coverage of work that is already predesignated as employment by the local laws of *either* country. What definition (C) does, then, is piggyback off Canada's definition of employment. It recognizes that the detached worker is an "employed person" under Article V, § 2, because his work qualifies as employment under Canadian law, and then borrows that foreign definition to say that it is also employment under the Act. And now that the detached worker's services qualify as employment under

the Act, he can be taxed and accrue coverage under the U.S. system, just as Congress intended.

Thus, for purposes of the Canadian-American Agreement, the three definitions of employment under § 410 are (A) any service performed in the United States, regardless of residency or citizenship, (B) any service performed by an American citizen for an American employer, regardless of location, and (C) any service designated as employment by Canadian law regardless of residency, citizenship, or location ("regardless of where or by whom performed"). 42 U.S.C. § 410(a). Although certainly broad, the majority is wrong to say this definition includes all compensated services, even before addressing § 410(a)'s exclusions. This definition is derived not from common sense, but rather from the text of the Act and the Agreement.

The Commissioner instead insists that definition (C) includes service performed in Canada only if the United States and Canada agree that those services should be subject to U.S. Social Security contributions, and the majority apparently agrees. But where does that limitation come from? The exact same logic applied to the detached worker works even for someone, like Beeler, who is an "employed person" under Article V, § 1. Her work is equally designated as employment by Canadian law and its coverage is assigned to Canada "under" the Agreement. Indeed, as she argues, effectively all work in either of the two signatories' systems is designated as employment under the Agreement. The Agreement governs not just the detached workers of the world—the hard cases that require a tiebreaker—but also the easy cases, like a Canadian working in Canada. This is the insight provided by *Erlich v.*

*United States*, 104 Fed. Cl. 12 (2012), on which Beeler relies and which the majority gives short shrift.

The question presented in *Erlich* was the interpretation of a tax provision, I.R.C. § 1401 note, which provides that a taxpayer cannot receive a deduction or credit for "taxes paid … with respect to any period of employment … which is covered under the social security system of [a] foreign country in accordance with the terms of a[ § 433] agreement." *Erlich*, 104 Fed. Cl. at 13-14 (quoting Social Security Amendments of 1977, Pub. L. No. 95-216, § 317(b)(4), 91 Stat. 1509, 1540). The taxpayers argued that taxes were paid in accordance with an agreement only if the agreement was the tiebreaker, and their work was (they assumed) employment only in France, and not the United States—meaning no tie. *Id.* at 15. The taxpayers, like the Commissioner here with respect to definition (C), asserted that a detached worker fit within this statute, but that they did not because their work, like Beeler's, would not have been taxed by U.S. law anyway. *Id.*

The *Erlich* court, however, agreed with another Commissioner (of Internal Revenue). It recognized that the French totalization agreement and § 433 were not limited to situations of conflict—or as the majority calls them "points of intersection"—like a detached worker, but "extend[ed] to 'employment or self-employment, or any service which is recognized as equivalent to employment or self-employment under this subchapter *or* the social security system of a foreign country which is a party to such agreement.'" *Id.* at 17 (quoting 42 U.S.C. § 433(c)(1)(B)(i)). The inclusive "or" made it so the agreement governed the full Venn diagram of employment in each country, and not just the overlapping middle. Because of this feature, it was "plain that the French social security taxes

paid by Mr. Erlich for his work in France were paid for periods of coverage in accordance with the terms of the Totalization Agreement." *Erlich*, 104 Fed. Cl. at 18. It was in accordance with the agreement, and the French-U.S. equivalent of Article V, § 1, that coverage of French employment was assigned to France.[5]

The same reasoning applies for definition (C)'s phrase "under an agreement." *Cf. Pereira v. Sessions*, 138 S. Ct. 2105, 2117 (2018) (recognizing that "under" is a "chameleon" but can mean "in accordance with"). Just like how the *Erlich* taxpayers' work in France was assigned to France in accordance with the agreement, Beeler's work in Canada, designated as employment by Canadian law, was assigned to the Canada Pension Plan under the Agreement—specifically under Article V, § 1. That her work, unlike the detached worker's, would have been assigned to Canada anyway is no matter. It was still designated as employment under an agreement, even if the Agreement enforced what would have been the default rule. Because it was designated as employment under an agreement, it is employment under § 410. And because it was

---

[5] One modification to the *Erlich* analysis follows from Beeler's logic. The court there took the parties' assumption that the taxpayers' service in France was not "employment" under the FICA definition, I.R.C. § 3121(b), which tracks 42 U.S.C. § 410(a). *See Erlich*, 104 Fed. Cl. at 15 & n.4. I believe it was employment under the FICA, albeit *untaxed* employment under the terms of the agreement and I.R.C. § 3101(c). The court recognized this possibility, though only hypothetically "were the tax code to be amended." *See Erlich*, 104 F.3d. Cl. at 17–18. Another way to frame this analysis is to say that definition (C) makes all employment in a foreign country with an agreement into a tie for the agreement to break.

employment under § 410, it is not "noncovered service" that triggers the Provision.[6]

I do not have any reason to believe that this was Congress's goal when it passed the Provision or definition (C). I doubt Congress wanted someone who works half his career in civil service for his state government—one of the exceptions to the definition of employment, 42 U.S.C. § 410(a)(7)—to receive a smaller benefit, all else equal, than one who spent half his career working in a foreign country. Beeler has two explanations for this discrepancy, neither convincing. The majority rightly rejects her first, based on the equal-treatment provision in the Agreement. Second, she posits that Congress did not want to "penalize" those with foreign pensions. But Congress's underlying premise in enacting the Provision is that it was not imposing a penalty, but removing a windfall. Still, it does not matter that Congress might not have anticipated Beeler keeping her windfall, when the text leads to that result. Perhaps the Provision would work better, if instead of asking whether service was employment, it asked whether it had been covered and taxed like the Commission insists, but "[o]ur job is to enforce the text on the books, not to add or subtract qualifiers that a litigant thinks would make the statute more sensible." *Gienapp v. Harbor Crest*, 756 F.3d 527, 531 (7th Cir. 2014).

There may be other arguments, including ones based on the regulations, for reducing Beeler's benefits and avoiding

---

[6] This may apply only to some of Beeler's work in Canada. She worked for years in Canada before either definition (C) or the Agreement existed. Neither party addresses whether these rules should be retroactive.

her windfall. The majority, though, accomplished this goal only by equating coverage with employment while outright ignoring Beeler's argument for why the two concepts can be separated in the international sphere. Because I agree with Beeler that employment is not necessarily covered employment, the majority's reasoning does not convince me that affirmance is appropriate. I therefore respectfully dissent.