**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| FRANCES MICHENER,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security;<br>SOCIAL SECURITY ADMINISTRATION,<br>*Defendants-Appellees*. | No. 20-16834<br><br>D.C. No.<br>5:19-cv-04377-<br>SVK<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Susan G. Van Keulen, Magistrate Judge, Presiding

Argued and Submitted October 19, 2021
San Francisco, California

Filed December 30, 2021

Before: Paul J. Watford and Andrew D. Hurwitz, Circuit
Judges, and M. Miller Baker,[*] Judge.

Opinion by Judge Hurwitz

---

[*] The Honorable M. Miller Baker, Judge for the United States Court of International Trade, sitting by designation.

## SUMMARY[**]

### Social Security

The panel affirmed the district court's summary judgment in favor of the Social Security Administration in a putative class action alleging that reducing the Social Security benefits of class members based on the receipt of a foreign social security pension violated the Windfall Elimination Program, its implementing regulation, and the Agreement Between the Government of the United States of America and the Government of Canada with Respect to Social Security.

Plaintiff Frances Michener is a citizen of both the United States and Canada, as was her late husband, Dr. Steven Rosell. From 1976 to 1990, they lived in Canada where Rosell worked and participated in the Canada Pension Plan. During that period, Rosell did not contribute to the Social Security system. In 1990, Rosell and Michener moved to the United States where Rosell paid Social Security taxes on his earnings until becoming disabled in 2012. Rosell then began receiving Social Security disability benefits, in addition to benefits under the Canada Pension Plan, and Michener later began receiving Social Security spousal benefits.

In June 2015, the Social Security Administration notified Rosell and Michener that their benefits would be reduced under the Windfall Elimination Program ("WEP') because Rosell "received a pension based on work not covered by

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Social Security taxes," and sought the return of $7,194.00 for past overpayment of benefits. After seeking reconsideration and review by an administrative law judge, plaintiffs filed this putative action in federal court.

WEP reduces the Social Security benefits of individuals who receive a pension for work not covered by the Social Security system. 42 U.S.C. § 415(a)(7). Under the WEP implementing regulation, noncovered employment includes "employment outside the United States which is not covered under the United States Social Security system." 20 C.F.R. § 404.213(a)(3). The statute allows service in other countries, which ordinarily would not be covered by the Social Security system, to be designated as "employment"— and thereby excluded from the WEP—pursuant to a "totalization arrangement" agreement entered into under 42 U.S.C. § 433 between the Social Security system and the corresponding system of a foreign country. Under a section 433 agreement, employment or service may result in a "period of coverage" under either the Social Security system or the foreign country's system, "but not under both." *Id.* § 433(c)(1)(B)(i). The United States and Canada have a section 433 agreement.

The panel determined that nothing in the U.S.-Canada Agreement designated Rosell's Canadian service as employment for purposes of the Social Security Act or recognized it as the equivalent of U.S. employment. The panel noted that plaintiffs' reading of the Agreement would entitle a recipient to receive credit for service under both the U.S. and the Canadian social security systems for the same period of service, which is expressly prohibited under the Social Security Act. Likewise, if any service considered "employment" in Canada was also "employment" for purposes of U.S. Social Security, that service would be

subject to Social Security taxes. *See* 26 U.S.C. § 3121(b). Rosell's service was not. The panel concluded that the WEP applies to a Social Security beneficiary who receives benefits under the Canada Pension Plan. Because Rosell's Canadian pension was based at least in part on his earnings for noncovered service, the agency correctly reduced the couple's Social Security benefits.

## COUNSEL

Thomas F. Allen, Jr. (argued), Frost Brown Todd LLC, Dallas, Texas; Aaron M. Bernay, Frost Brown Todd LLC Cincinnati, Ohio; William F. Murphy, Dillingham & Murphy, LLP, San Francisco, California; Jonathan M. Bruce, Law Office of Jonathan Bruce, LLC, Olathe, Kansas; for Plaintiff-Appellant.

Sushma Soni (argued) and Sharon Swingle, Appellate Staff; Stephanie Hinds, Acting United States Attorney; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; Royce Min, General Counsel; Stacey W. Harris, Attorney; Office of Program Law, Office of the General Counsel, Social Security Administration, Washington, D.C.; for Defendants-Appellees.

**OPINION**

HURWITZ, Circuit Judge:

The Windfall Elimination Program ("WEP") reduces the Social Security benefits of individuals who receive a pension for work not covered by the Social Security system. 42 U.S.C. § 415(a)(7). The question for decision is whether the WEP applies to a Social Security beneficiary who receives benefits under the Canada Pension Plan. The Social Security Administration ("SSA") concluded that it does, and the district court upheld the agency determination. We agree.

I.

Frances Michener is a citizen of both the United States and Canada, as was her late husband, Dr. Steven Rosell. From 1976 to 1990, they lived in Canada where Rosell worked and participated in the Canada Pension Plan. During that period, Rosell did not contribute to the Social Security system. In 1990, Rosell and Michener moved to the United States where Rosell paid Social Security taxes on his earnings until becoming disabled in 2012. Rosell then began receiving Social Security disability benefits, in addition to benefits under the Canada Pension Plan, and Michener later began receiving Social Security spousal benefits.

In June 2015, SSA notified Rosell and Michener that their benefits would be reduced under the WEP because Rosell "received a pension based on work not covered by Social Security taxes," and sought the return of $7,194.00 for past overpayment of benefits. Rosell and Michener sought reconsideration by SSA, and review by an Administrative Law Judge and the Appeals Council, each of whom held that the couple's Social Security benefits were subject to reduction under the WEP.

Rosell and Michener then filed this putative class action in federal court; after Rosell's death in December 2018, Michener became the lead plaintiff. The complaint alleged that reducing the Social Security benefits of class members based on the receipt of a foreign social security pension violated the WEP, its implementing regulation, and the Agreement Between the Government of the United States of America and the Government of Canada with Respect to Social Security (the "U.S.-Canada Agreement"), Can.-U.S., Mar. 11, 1981, 35 U.S.T. 3405. The district court granted summary judgment to the agency and denied a motion for class certification as moot. *Michener v. Berryhill*, No. 19-cv-04377-SVK, 2020 WL 4810693, at *8 (N.D. Cal. July 24, 2020). This timely appeal followed.

## II.

We review the district court's judgment *de novo*, *Larson v. Saul*, 967 F.3d 914, 922 (9th Cir. 2020), and the starting point for that review is the statutory framework. The Social Security Act "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988) (citing 42 U.S.C. §§ 403, 423)). Individuals with 40 quarters of coverage are entitled to retirement and disability benefits. 42 U.S.C. § 414(a)(2). The period of "coverage" credited depends on the amount of time spent in "covered" service—service for which individuals "pay social-security taxes and are entitled to social-security retirement benefits on their earnings." *Larson*, 967 F.3d at 918. The system is progressive, so participants with lower career earnings receive a greater percentage of their earnings in Social Security benefits than those with higher career earnings. *Id.*

Before 1983, a pension received from noncovered employment did not affect a participant's Social Security

benefits. *Id.* "Consequently, an individual who worked for both covered and noncovered wages would receive a windfall absent the WEP because he would be eligible for both social security retirement benefits and [other] pension payments." *Das v. Dep't of Health & Hum. Servs.*, 17 F.3d 1250, 1253 (9th Cir. 1994); *see also* Federal Old-Age, Survivors and Disability Insurance; Effect of Pension From Noncovered Employment, 52 Fed. Reg. 47,914, 47,915 (Dec. 17, 1987) ("[T]he worker with a low earnings history but not pension from noncovered work receives a relatively high replacement of former earnings when compared to the worker with a history of high covered earnings. This is what Congress intended. But where a worker with low earnings because of minimal covered employment also receives a pension from noncovered employment, the result is the unintended windfall of Social Security benefits."). Congress addressed this issue by adding the WEP, 42 U.S.C. § 415(a)(7), to the Social Security Act. Pub. L. No. 98-21, § 113, 97 Stat. 65, 76–79 (1983). When applicable, the WEP formula reduces Social Security benefits by no more than "one-half of the portion of the monthly periodic payment which is attributable to noncovered service." 42 U.S.C. § 415(a)(7)(B)(i). The WEP applies to

> an individual whose primary insurance amount would be computed under [the standard formula], who . . . becomes eligible after 1985 for a monthly periodic payment . . . which is based in whole or in part upon his or her earnings for service which did not constitute "employment" as defined in section 410 of this title for purposes of this subchapter (hereafter in this paragraph and in subsection (d)(3) referred to as "noncovered service").

*Id.* § 415(a)(7)(A)(ii).    Under the WEP implementing regulation, noncovered employment includes "employment outside the United States which is not covered under the United States Social Security system."    20 C.F.R. § 404.213(a)(3).

The WEP expressly adopts the definition of "employment" in 42 U.S.C. § 410(a), as

> any service, of whatever nature, performed after 1950 (A) by an employee for the person employing him, irrespective of the citizenship or residence of either, (i) within the United States, or (ii) on or in connection with an American vessel or American aircraft . . . or (B) outside the United States by a citizen or resident of the United States as an employee (i) of an American employer (as defined in subsection (e) of this section), or (ii) of a foreign affiliate (as defined in section 3121(l)(6) of the Internal Revenue Code of 1986) of an American employer during any period for which there is in effect an agreement, entered into pursuant to section 3121(l) of such Code, with respect to such affiliate, or (C) *if it is service, regardless of where or by whom performed, which is designated as employment or recognized as equivalent to employment under an agreement entered into under section 433 of this title*.

(emphasis added).  A participant's "employment" is used to determine "wages," *id.* § 409(a) ("remuneration paid . . . for employment"), and wages in turn determine periods of

coverage for Social Security eligibility, *id.* § 413(a)(2)(A)(ii) (awarding quarters of coverage based on "the total of the wages paid . . . in a calendar year"). The definition of employment in § 410(a) is also materially identical to the definition in the Internal Revenue Code, 26 U.S.C. § 3121(b), identifying service subject to Social Security taxation. *See also* 26 U.S.C. § 3101(a) (authorizing Social Security taxes on "wages . . . received by the individual with respect to employment (as defined in section 3121(b))").

An agreement "entered into under section 433" is a "totalization arrangement" between the Social Security system and the corresponding system of a foreign country. 42 U.S.C. § 433(a). The purpose of a totalization arrangement is to establish how periods of coverage accrued under two countries' systems are treated by each to establish eligibility for benefits. *Id.*; *see also Eshel v. Comm'r*, 831 F.3d 512, 514 (D.C. Cir. 2016) (explaining that section 433 agreements permit "workers who divide their careers among and pay taxes to multiple countries" to "combine periods of payment into different countries' social security systems to eventually become eligible to receive benefits under a signatory country's system"). A "period of coverage" is defined as "a period of payment of contributions or a period of earnings based on wages for employment or on self-employment income, or any similar period recognized as equivalent thereto under this subchapter or under the social security system of a country which is a party to an agreement entered into under this section." 42 U.S.C. § 433(b)(2). Under a section 433 agreement, employment or service may result in a "period of coverage" under either the Social Security system or the foreign country's system, "but not under both." *Id.* § 433(c)(1)(B)(i). The United States and

Canada have a section 433 agreement. *See Beeler v. Saul*, 977 F.3d 577, 583 (7th Cir. 2020) (describing agreement).

### III.

The dispositive issue in this case is whether the U.S.-Canada Agreement designates Rosell's Canadian service as employment under the Social Security Act. If so, Rosell's Canadian pension would be based on earnings for service that *did* constitute employment, and the WEP would not apply.

The WEP provides that service which is not employment is "hereafter in this paragraph and in subsection (d)(3) referred to as 'noncovered service.'" 42 U.S.C. § 415(a)(7)(A)(ii). The district court correctly held that the statute thus "equates 'service which did not constitute "employment" as defined in section 410' with 'noncovered service' on which no Social Security taxes were paid." *Michener*, 2020 WL 4810693, at *5. Indeed, in other contexts, courts have "routinely construed 'employment' under § 410 as consistent with 'covered employment,' that is, work on which Social Security taxes were paid." *Beeler*, 977 F.3d at 586; *see also Flemming v. Nestor*, 363 U.S. 603, 608 (1960) ("Broadly speaking, eligibility for benefits depends on satisfying statutory conditions as to (1) employment in covered employment or self-employment . . .").

However, the statute also provides that the WEP does not apply to pensions received because of service "designated as employment or recognized as equivalent to employment" in a section 433 agreement. 42 U.S.C. § 410(a)(C). Thus, the statute allows service in other countries, which ordinarily would not be covered by the Social Security system, to be designated as "employment"—and thereby excluded from

the WEP—through a section 433 agreement between the United States and another country.  Michener argues that the U.S.-Canada Agreement does so for Rosell's work in Canada.

Michener's argument rests on a general provision of the Agreement, which provides that "[a]ny term not defined in this Article has the meaning assigned to it in the applicable laws."  U.S.-Canada Agreement, Art. I ¶ 11.  The Agreement later defines "applicable laws" as U.S. Social Security laws (Title II of the Social Security Act and related regulations, and Chapters 2 and 21 of the Internal Revenue Code and related regulations), Canada's social security laws (the Old Age Security Act and related regulations), and the Canada Pension Plan (and its regulations).  *Id.*, Art. II ¶ 1.  Michener contends that because "employment" is not defined in the Agreement, the term includes "employment" as defined in Canadian law, and therefore Rosell's Canadian service is "employment" excluded from the WEP.

We disagree.  Michener misconstrues both the function of section 433 agreements and the U.S.-Canada Agreement itself.  The relevant provision of the Social Security Act defines "employment" as service that "is *designated* as employment or *recognized* as equivalent to employment" by a section 433 agreement.  42 U.S.C. § 410(a)(C) (emphasis added).  Nothing in the U.S.-Canada Agreement designates Rosell's Canadian service as employment for purposes of the Social Security Act or recognizes it as the equivalent of U.S. employment.  Rather, the definitional section on which Michener relies simply acknowledges that each country has defined employment in its own laws.  It does not follow that *any* work in Canada subject to Canadian laws, such as

Rosell's Canadian service, is "designated as employment" by the U.S.-Canada Agreement.[1]

Indeed, when the drafters of the Agreement wanted to make work performed in Canada "subject to" the Social Security Act, they did so explicitly. For example, Article V ¶ 2(a) provides:

> Where a person who is normally employed in the territory of one Contracting State and who is covered under its laws in respect of work performed for an employer having a place of business in that territory is sent by that employer to work for the same employer in the territory of the other Contracting State, the person shall be subject to the laws of only the first Contracting State in respect of that work, as if it were performed in the territory of the first Contracting State.

Similarly, Article VII ¶ 1 provides that when an individual lacks the sufficient quarters of coverage to be eligible for Social Security benefits, "periods of coverage completed under the Canada Pension Plan shall be taken into account to the extent they do not coincide with calendar quarters already credited as quarters of coverage under United States laws." If the general reference in Article I to undefined terms being defined under the applicable laws of each nation were read as Michener suggests, there would be no need for

---

[1] Michener also points to the clause in Article V ¶ 1 of the Agreement providing that "an employed person who works in the territory of one of the Contracting States shall, in respect of that work, be subject to the laws of only that Contracting State." However, the fact that service in Canada is *governed* by Canadian law does not designate that service as employment under the Social Security Act.

this provision; all service treated as employment under the Canadian system would automatically count toward Social Security eligibility. *See Republic of Ecuador v. Mackay*, 742 F.3d 860, 864 (9th Cir. 2014) (explaining the "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant") (cleaned up).

Moreover, Michener's reading of the Agreement would entitle a recipient to receive credit for service under *both* the U.S. and Canadian social security systems for the same period of service. But this is expressly prohibited under the Social Security Act. *See* 42 U.S.C. § 433(c)(1)(B)(i) (providing that, regardless of the terms of a section 433 agreement, employment or service may result in a "period of coverage" under either the Social Security system or the foreign country's system, "but not under both"). Likewise, if any service considered "employment" in Canada was also "employment" for purposes of U.S. Social Security, that service would be subject to Social Security taxes. *See* 26 U.S.C. § 3121(b). Rosell's service was not.

The WEP's implementing regulation, 20 C.F.R. § 404.213, entitled "Computation where you are eligible for a pension based on your noncovered employment," states that SSA will apply the WEP formula to an individual's Social Security benefits if he becomes eligible for another monthly pension. *Id.* § 404.213(a)(3). It then provides, parenthetically:

> Noncovered employment includes employment outside the United States which is not covered under the United States Social Security system. Pensions from noncovered employment outside the United States include both pensions from social insurance systems that base benefits on earnings but not

> on residence or citizenship, and those from
> private employers.

*Id.* Michener urges that the parenthetical phrase "base[d] . . . on residence or citizenship" means that if residency or citizenship plays any role in pension eligibility, that pension is excluded from the WEP. Thus, although she acknowledges that the amount of Rosell's Canada Pension Plan payment was determined in part by his Canadian earnings, Michener argues that his pension is excluded from the WEP under the regulation because it is available only to Canadian citizens or residents.

Michener's reading is not supported by the text of the regulation, which says that a pension is from noncovered employment, and therefore subject to the WEP, if it "base[s] *benefits* on earnings"—not if pension eligibility or entitlement is based "solely" on earnings. 20 C.F.R. § 404.213(a)(3) (emphasis added). Moreover, the statute itself expressly provides that the WEP applies to a pension "which is based *in whole or in part* upon [an individual's] earnings for service which did not constitute 'employment' as defined in section 410 of this title for purposes of this subchapter." 42 U.S.C. § 415(a)(7)(A)(ii) (emphasis added).

## IV.

The SSA and the district court properly interpreted the WEP and the U.S.-Canada Agreement. Because Rosell's Canadian pension was based at least in part on his earnings

for noncovered service, the agency correctly reduced the couple's Social Security benefits.[2]

**AFFIRMED**.

---

[2] Our interpretation of the statutory and regulatory scheme and the Agreement is in accord with that of the Seventh Circuit in *Beeler*. 977 F.3d at 581. To the extent that *Rabanal v. Colvin*, 987 F. Supp. 2d 1106 (D. Colo. 2013), is to the contrary, we decline to follow it.